CASE 22—INDICTMENT—SEPT. 28.

# Holloway v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. THE LAW OF SELF-DEFENSE.—If one without fault believes, and has reasonable grounds to believe that another is about to take his life, or do him great bodily harm, and he has no other apparently safe means of securing himself from the impending danger, he may take the life of the other, and is excusable upon the ground of self-defense and apparent necessity, although it may turn out that the appearances were false, and that there was in fact neither design to do him serious injury, nor danger that it would be done. (2 Comstock, 197; 2 Wright, 265; 14 Ben Monroe, 614; 18 Ben Monroe, 49.)

2. *If one believes, and has reasonable grounds to believe* that another has sought him out for the purpose of killing him, or doing him great bodily harm, and that he is prepared therefor with deadly weapons, and makes demonstrations manifesting an intention to commence an attack, he is not required to retreat, but has the right to stand and defend himself, and even pursue his adversary until he has secured himself from danger; and if in doing so it is necessary, or upon reasonable ground appears to be necessary, to kill his antagonist, the killing is excusable upon the ground of self-defense. (Phillips v. Commonwealth, 2 Duv. 328; Young v. Commonwealth, 6 Bush, 312; Bohannon v. Commonwealth, 8 Bush, 481.)

3. THE CREDIBILITY OF WITNESSES AND THE EFFECT OF THEIR TESTIMONY are matters within the exclusive province of the jury, which the court can not invade by shaping its instructions so as to deprive the jury of acting on any given hypothesis, except when there is no proof tending to sustain it.

4. *One made infamous by conviction for dealing faro* is not thereby rendered incompetent to testify as a witness.

5. REASONABLE DOUBT.—The instruction is not objectionable that " the jury can not convict on a mere preponderance of testimony, but the law presumes the prisoner innocent until he is proven guilty beyond a reasonable doubt. Proven guilty beyond a reasonable doubt means that the jury must be convinced from the testimony of the truth of every fact necessary to establish his guilt."

W. C. P. BRECKINRIDGE, ⎫
J. B. HUSTON, . . . . ⎬ . . . . . . . For Appellant,
⎭
CITED

7 Bush, 327, Blimm v. Commonwealth.
8 Bush, 481, Bohannon v. Commonwealth.
2 Duvall, 328, Phillips v. Commonwealth.
6 Bush, 320, Young v. Commonwealth.
8 Met. 18, Jane v. Commonwealth.
1 Greenleaf on Ev. 372.
14 B. Mon. 494, Rapp v. Commonwealth.
18 B. Mon. 54.          Crim. Code, sec. 152.

THOS. E. MOSS, Attorney General, . . . . For Appellee.
(Brief not in record.)

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

Upon the trial of Robert Holloway, who stood indicted for the murder of Joseph Shaw, he was convicted of the crime of

manslaughter and sentenced to confinement at hard labor in the state penitentiary for the term of two years.

He has appealed to this court, and complains that the law of his case was not correctly presented by the instructions given to the jury. Instruction No. 3, given on motion of the commonwealth, is in these words: "If the jury believe from the evidence that at the time the defendant killed Shaw, if he did kill him, the defendant believed and had good reason to believe that he was in serious danger of immediate death or great bodily harm at the hands of said Shaw, and that his only means of securing safety from the said immediate peril was to shoot the deceased, then the defendant was excusable on the ground of self-defense, and the jury should acquit the defendant; but to constitute this defense, the jury are instructed that the danger should have appeared to the defendant in the exercise of a reasonable judgment to have been serious and immediate, and that he had no other apparent means of securing his safety."

This instruction is inconsistent with itself. The jury were first told that Holloway had no legal right to kill Shaw, unless he had good reason to believe that he was in serious danger of immediate death or great bodily harm, and then (inferentially, it is true) that he might be held excusable for the killing if the danger appeared to him in the exercise of a reasonable judgment to be serious and immediate, and he had no other apparent means of securing his safety. The jury may not have been able to reconcile these two propositions, and as the latter clause of the instruction was evidently intended to supply something that was regarded as necessary to modify or restrict, rather than to enlarge the application of the law of self-defense, as expressed in the first clause, the jury would naturally, if not necessarily, conclude that to excuse Holloway it was necessary that he should have believed, and had good reason to believe, that he was in serious danger of immediate

death or great bodily harm at the hands of Shaw, and that his only means of securing safety from such immediate peril was to shoot his antagonist.

This is not the law, and this instruction was erroneous and misleading.

If Holloway was without fault, and he believed, and had reasonable grounds to believe that Shaw was about to take his life, or do him great bodily harm, and he had no other apparently safe means of securing himself from the then impending danger, he had the right to shoot, and he is excusable upon the ground of self-defense and apparent necessity. (Shorter v. The People, 2 Comstock, 197; Logue v. Commonwealth, 2 Wright, 265; Rapp v. Commonwealth, 14 B. Monroe, 494; Meredith v. Commonwealth, 18 B. Monroe, 49.) In this instruction the word "reason" is used in the sense of cause, and the jury were in effect told that Holloway must have had a good, or, in other words, a valid or sufficient cause to believe that he was in immediate danger of losing his life, or of suffering great bodily injury, in order to be excused.

The rule as established by the cases cited is that if the defendant acts upon "reasonable grounds" he is to be excused, although it may turn out "that the appearances were false, and there was in fact neither design to do him serious injury, nor danger that it would be done."

It is also apparent that, if the jury acted upon the first proposition, as we have shown they would naturally do, they must have been impressed with the conviction that they could not acquit, if they believed, from the evidence, that Holloway might have escaped the impending danger by any other means less extreme than those to which he resorted. We have just seen that it is sufficient to excuse him that he had no other apparently safe means of escape.

It is made a further ground of complaint, that the circuit court, in all its instructions, assumed that the right of the

prisoner to shoot depended upon the fact that he, upon reasonable grounds, believed himself to be in immediate danger, and that he had no other apparent means of securing his personal safety. It is not denied that such is the law in cases of mutual rencounters and affrays with deadly weapons, but it is insisted that the evidence in this case brings it within the rule recognized and enforced in the cases of Bohannon, Young, and Phillips.

There is evidence conducing to show that about eight months before the killing Holloway and Shaw had quarreled about an inmate of a house of ill-fame, and that the deceased had drawn, and attempted to use upon the prisoner, a knife or dagger, and that subsequent to this difficulty they were never on friendly terms. It is in proof that on the 18th of December prior to the 2d of January, the date of the killing, Shaw stated to the woman about whom the difficulty originated that he intended to kill Holloway; and also that he again made the same statement to her on the day of the homicide. She swears that she communicated to Holloway the fact that Shaw had made threats of this character. There is other evidence tending to show that Shaw had continued to entertain toward Holloway feelings of hostility, and that he had manifested on one or two occasions a disposition to provoke another difficulty with him. It seems that Shaw was dissipated in his habits, and that he was under the influence of liquor the greater portion of the day upon which he was killed. During the afternoon of that day he said, in the presence of one witness, that "he would shoot some one's damned head off that day;" in the presence of another, that "he was going to raise hell that day;" and in the presence of still another, "I bet I kill somebody before night."

About six o'clock in the afternoon the prisoner, with two companions, was in the bar-room or saloon of the St. Nicholas Hotel, sitting at a table engaged in a game of cards. Shaw

came to the hotel intoxicated, with his hat pulled over his eyes, walked into the dining-room, and seemed to look into the faces of some of the guests. He then came out into the office and said to one of the proprietors, "George, I think more of that damned little woman than any woman in the world, and I'm looking for the man that has been talking about her." He then passed down stairs into the saloon, and leaned with his back against the counter a short time, and in a blustering manner announced his presence and then passed out. He went to a neighboring store-room, and, contrary to the remonstrances of two young men who were present, took possession of a loaded repeating pistol, and started back to the hotel. One of the young men left the store-room and reached the hotel first, and announced either to or in the hearing of the prisoner, "Look out for him! Joe Shaw has got a loaded pistol!" Shaw, upon his return, passed through the office (with the pistol in his bosom) and down the stairs into the bar-room. McMurtry, one of the proprietors, followed, and caught him at the foot of the stairs, and told him he must not have a "fuss." His reply was that he did not want a "fuss," but wanted a drink, and intended to have it. He again went to the counter and was followed by McMurtry, who told him he would have him arrested if he created a disturbance. He replied, "Have me arrested, then," and about the same time drew his pistol and cocked it. McMurtry seized him, and so held his hand as to keep the muzzle of the pistol pointing to the floor, and pushed him toward one of the doors of the room. The witnesses do not agree as to what Shaw said when he drew and cocked his pistol. McMurtry's recollection is that in reply to a question asked by him he said he always carried a pistol. Another witness understood him to say, "I came here for business, and I mean business, and I am going to have it." About the time the pistol was drawn Holloway arose from the table, passed around the stove in the direction of the door toward

which McMurtry was pushing Shaw, and remarked, "Turn him loose; I will take care of him;" and when within five or six feet from McMurtry and Shaw fired from a small pistol three shots, two of which took effect in the head and one in the throat of Shaw, who fell and died almost instantly.

Without intimating an opinion as to the conclusions that the jury might legitimately have drawn from the facts recited, we are satisfied that the evidence was such as to entitle the prisoner to an instruction which would have presented to the jury the law of self-defense as laid down by East (1 P. C. 271, 272), and approved by this court in the cases of Phillips and Bohannon. The prisoner had the right to have the jury told that if they were of opinion that from all the circumstances of the case he believed and had reasonable ground to believe that Shaw had sought him out for the purpose of killing or doing him great bodily harm, and that he was prepared therefor with a deadly weapon, and made demonstrations manifesting an intention to commence an attack, then he (the prisoner) was not obliged to retreat, but had the right to stand and defend himself, and if, in so doing, it was necessary or upon reasonable grounds appeared to be necessary that he should kill his antagonist, the killing is excusable upon the ground of self-defense.

East says: "A man may repel force by force in defense of his person . . . against one who manifestly intends or endeavors by violence or surprise to commit a known felony. . . . He is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing it is justifiable self-defense."

Bishop holds the law to be, that where an attack is made with murderous intent the person attacked is not required to flee, but may stand his ground, and, if it be necessary, kill his assailant. (1 Bishop's Crim. Law, 5th ed., sec. 850.)

The rule thus stated is also supported by the cases of Phil-

lips (2 Duvall, 328), Young (6 Bush, 312), and Bohannon (8 Bush, 481), and is the settled law of this state.

The instruction asked by appellant, for the purpose of presenting to the jury this view of the law of self-defense, was objectionable. It was so framed as to group together certain facts and circumstances supposed to have been proved, and thereby to give to them undue prominence and importance. But while it was proper to refuse this objectionable instruction, it was nevertheless proper that the court should either embody this idea in an instruction properly drawn, or so modify the instructions it had determined to give as to present through them the whole of the law of self-defense made applicable by the testimony heard in the case.

The instructions as given practically excluded from the consideration of the jury very much of the evidence upon which the prisoner relied to show that when he killed Shaw he was resisting, or upon reasonable grounds believed himself to be resisting, a premeditated and murderous attack.

It may not have been the duty of the circuit court to correct the instructions asked by the prisoner, but it was error to so instruct on the motion of the commonwealth as to withhold from the consideration of the jury any part of the law applicable to the case.

We need not express an opinion as to the credibility of any witness nor as to the effect of the testimony given. These are matters coming within the exclusive province of the jury, and this province the court can not invade by so shaping its instructions as to deprive the jury of the right to act upon any given hypothesis, except when there is no proof tending to sustain it.

Instruction No. 4 asked by the accused is in these words: "The jury can not convict on a mere preponderance of testimony, but the law presumes the prisoner innocent until he is proven guilty beyond a reasonable doubt. Proven guilty be-

yond a reasonable doubt means that the jury must be convinced from the testimony of the truth of every fact necessary to establish his guilt."

This instruction is not open to the objection sustained to that asked in the case of Sparks v. The Commonwealth (3 Bush, 117). It does not leave the jury to determine what facts are essential to the conclusion of guilt. It confines the application of the doubt under consideration to the facts which they had already been told were essential to warrant a conviction. It does not conflict with the rule approved in the late case of Brady v. The Commonwealth, and the substance of the latter clause was given in the second instruction in Brady's case, and approved by the court. It leaves the jury free to determine as to the weight which each and every portion of the evidence shall receive. It sheds some light upon a legal proposition by no means free from difficulty, and has no tendency whatever to mislead. We do not intimate that the mere refusal to give this instruction would have authorized a reversal of the judgment of conviction, but we see no good reason upon which to base the refusal of the court to give it. There was no error in the admission or exclusion of testimony.

We are of opinion that Morgan and Beach are competent witnesses. The statute providing that a party convicted of dealing faro shall be deemed infamous (sec. 6, art. 1, chap. 47, General Statutes) prescribes the consequences that shall attend this infamy, which are disqualification for the exercise of the right of suffrage and for holding any office of honor, trust, or profit. This particular infamy and its enumerated consequences are intended to operate as a punishment to the offender, and not to take away from the commonwealth or any litigant the right to make use of him as a witness.

For the error of the circuit court in giving instructions the judgment is reversed and the cause remanded for a new trial upon principles consistent with this opinion.