# KENTUCKY COURT OF APPEALS

GEO. B. LETCHER *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 6—305.]

**Impeachment Evidence.**

If a witness at the trial of one charged with murder testifies to material facts it is competent to prove that he has previously stated that he knows nothing about the facts, for the purpose of affecting his credibility.

**Evidence of Uncommunicated Threats.**

It is not allowable in a murder trial to prove threats made by the deceased ten or twelve days before the killing, by way of proving the action and conduct of the deceased, where such threats were not communicated to the defendant until after the killing.

**Instructions**

Instructions given in a trial must be construed together and where one standing alone might be erroneous it may be cured by a second instruction.

### APPEAL FROM JESSAMINE CIRCUIT COURT.

October 11, 1884.

OPINION BY JUDGE HOLT:

The appellant, Geo. B. Letcher, stands convicted of voluntary manslaughter for the killing of E. E. Ewins in October, 1882. It occurred betwen twelve and one o'clock at night and but one eye witness testifies as to it.

At times the parties had been friendly, and then unfriendly; and the state having proven that about nine o'clock of the very night that the tragedy occurred they were drinking together, it is claimed, that thereby the testimony of the defense relating to threats by the deceased against the appellant was forestalled and its effect destroyed.

It was proper however for the jury to know and consider the state of feeling between them just prior to the killing; and even granting that this testimony should have been offered in rebuttal and not in chief it would not authorize a reversal.

The witness Bell having testified to material matters for the

1

defendant, the Commonwealth had the right to show that he had previously stated, that he know nothing about the case.    The fact that one of the witnesses upon this point was an attorney, assisting in the prosecution, did not disqualify him, as would have been the case under the Roman law; and while it might be in accord with public policy, yet such a rule has never been adopted as a part of the common law; moreover he was excluded from the court room during the examination of the witness whom he was afterwards called to contradict.

The same is true as to the contradiction of A. Cobb, a witness for the defendant, by H. C. Hemphill.    If the former had simply been asked if he had not said that he knew nothing that would be of any advantage to the defendant, it would not have been proper to show by the latter that Cobb had given such an opinion as it would have related to an immaterial matter; but there was coupled with it the additional statement, that he only knew that "Ben Evans bought some cartridges from him"; and if a witness who testifies to material facts, has previously stated that he knows nothing about the facts of a case it is certainly competent to prove the statement by way of contradicting him.

Neither can the appellant complain because he was not allowed to prove by one Carlisle that the latter had told him about ten or twelve days before the killing that one Moore had told him (Carlisle) that the deceased would have killed him (Letcher) a short time before if something had not happened.    This statement was incompetent by way of proving the action and conduct of the deceased, as the witness had not learned it from him; and could only serve to illustrate the belief of the defendant that he was in danger at the hands of Ewins, and the court permitted Carlisle to testify, that he had cautioned the appellant and told him to be on his guard as to Ewins.

Upon the night of the killing and shortly before it happened the accused had an attachment levied upon the baggage of the deceased as he with his family was about to leave the state via the Southern Railroad.    The court below properly refused to let the defendant prove the manner and language of the deceased towards the officer whenever he levied the process; but correctly permitted the witnesses to state all that the deceased then said as to Letcher; and one of defendant's witnesses (A. M. Smith) testified without objection

upon the part of the state, that when the attachment was levied the deceased became very angry.

The testimony of the defendant tended to show that when the shooting occurred the deceased was approaching or advancing on the accused with one hand behind him holding a stick. A physician, who was a witness for the prosecution was permitted to give an opinion that in order for the same ball to have made the wound in the right shoulder that made the wound in the left one (as was the case in his opinion) Ewins must at the time of the shooting have had his face up Main Street and Letcher his face down Main cross Street.

The object of this testimony was to show that the parties were not then confronting each other; that the deceased was not then advancing on the defendant, and that the latter shot from a side position; but even if the opinion was not competent evidence, it could not have prejudiced the accused as it related to a matter as to which the jury could judge as well without this testimony as with it.

The law of the case seems to have been fully and correctly given to the jury by the court. The second instruction reads as follows, viz.: "If the jury believe from the evidence beyond a reasonable doubt that in the County of Jessamine before the finding of the indictment that the defendant unlawfully in sudden heat and passion and without previous malice and not in his necessary or apparently necessary self defense shot and killed E. E. Ewins then they should find him guilty of voluntary manslaughter and fix the penalty at confinement in the state penitentiary for not less than two nor more than twenty-one years."

It failed to inform the jury who was the judge of the apparently necessary self defense; and in itself was therefore objectionable; but this was in our opinion fully cured by the fifth instruction given to the jury, to-wit:

"If defendant at the time he shot and killed deceased (if he did shoot and kill him) believed and had reasonable grounds to believe that deceased was about to take his life or inflict upon him great bodily harm, he had the right to use such means then and there at his command as were necessary or in the exercise of a reasonable judgment seemed to him to be necessary to avert the impending danger; and if he was in danger of death, or the infliction of great

bodily harm at the hands of deceased or reasonably believed that he was in such danger and only used such force as was necessary or in the exercise of a reasonable judgment seemed to him to be necessary to avert such danger the jury should acquit him."

The two instructions taken together fully presented to the jury the law upon the point to which they related; and the jury could not have been misled by the omission in the first one.

An equivalent instruction to the sixth one given in this case was approved by this court in *Holloway v. Commonwealth*, 11 Bush (Ky.) 344.

We have not noticed the questions, which were for the first time raised by the appellant's motion for a new trial as they were not subject to exception and can not be considered by this court, but have · reviewed seriation the alleged errors complained of by the appellants in the briefs by his counsel, owing to· the extent of his punishment, but it was the province of the jury to judge of it and the judgment below, is *affirmed*.

*G. R. Pryor, George Denny, for appellant.*

*P. W. Hardin, for appellee.*