## Sizemore v. Commonwealth.

(Decided April 22, 1914.)

### Appeal from Leslie Circuit Court.

1. **Homicide—What Sufficient to Excuse on Ground of Self Defense.**
   —It is not necessary, in order to excuse a homicide upon the

ground of self-defense, that there should have been actual immediate impending danger; it is sufficient if the slayer believed and had reasonable ground to believe, that there was immediate impending danger, and that he had no other apparent and safe means of escape, although this supposed danger had no existence.

2. Evidence—Relevancy.—Facts which, though not in issue, are so connected with a fact in issue as to form part of the same transaction or subject-matter, are deemed to be relevant to the fact with which they are so connected.

CLEON K. CALVERT, LEWIS & LEWIS and R. B. ROBERTS for appellant.

JAMES GARNETT, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Logan Sizemore was indicted for the murder of Grant North; and having been convicted of voluntary manslaughter and sentenced to serve a term of from 2 to 21 years in the penitentiary, he appeals.

The tragedy occurred on Christmas day 1913, at the home of Nick Turner, the father-in-law of North. Sizemore lived on White Oak Creek, in Leslie County, and Turner lived on the same creek, about a mile above Sizemore's residence. A number of persons, including North, had assembled at Turner's for the purpose of joining in the holiday amusements.

About noon on Christmas day, Nick Turner and Hiram Hensley went to Sizemore's home and ate dinner with him. Turner then invited Sizemore and Hensley to go home with him, saying they would rob a bee-tree and have some honey for a Christmas treat. The three men then proceeded to Turner's residence. Sizemore and North had not been on good terms for some time and on the day before Christmas, Sizemore had said to North's wife that he intended to kill North on sight.

When the three men approached Turner's home, and Sizemore saw North standing in the yard, he said to Turner and Hensley that he would not go in because of North's presence, and the fact that he and North were not on good terms. Turner, however, insisted that Sizemore should go into the house, saying that the house was his, and that Sizemore would not be molested while there. North and several other persons were shooting fire-crackers in the yard.

A narrow porch extended along the front of Turner's residence, the entrance to the porch being at its lower end. A short time before, Mrs. Turner, who was sitting on the porch with Mrs. Hensley picking chickens for the Christmas dinner, had requested North to kill her another chicken, and North had gone into the back yard and shot a chicken with his revolver. When Turner, Hensley and Sizemore entered the yard and started toward the house, North was standing near the entrance of the porch twirling his pistol in his hand. Sizemore again intimated that he would go no further, but upon Turner's insisting that he go in, the three men went onto the porch, Turner in front, Sizemore immediately behind him, and Hensley following. As Hensley passed North at the end of the porch, some jocular remarks were passed between them about North's pistol, Hensley offered to shoot it if North would let him have it.

When the three men reached the porch, North's wife met Turner, her father, and began to tell him about the threat that Sizemore had made to her the day before, in which he had said he would kill North on sight. Turner and his daughter thereupon entered the house, and immediately thereafter Mrs. Turner, seeing Sizemore, said to him that she did not see how he could come to her house after he had mistreated her daughter; and that he was not welcome there. To this remark Sizemore replied, "I have always treated Nick Turner right, and I would not have come in here if he hadn't invited me in. I will get out, and if anybody wants anything they can get it." As Sizemore turned to leave, he passed between Hensley and the wall of the house; and immediately five shots were fired. When the smoke cleared away, North was lying dead upon the porch, and Manual Templeton was fatally wounded, dying shortly thereafter. Sizemore admits that he fired four of the shots, but claims that North fired the other shot, and fired first. One or more of the witnesses say that the reports of the shots were not the same; that the report of the first shot was the louder of the two, the subsequent reports being smaller in sound and volume.

Sizemore testified that as he was leaving the house, North threw his pistol on him and fired, but that Sizemore knocked the pistol up with his right hand so that the shot passed above him, and drawing his own pistol from his pocket with his left hand, he fired the four shots which resulted in the killing of North. On the day

after the killing the witness Lewis examined the wall of Turner's house and found a bullet hole in the wall that had been made by a bullet ranging from the lower end of the porch, and which had entered a poplar log in the side of the house. The bullet had passed into the room and through the upper door, and had struck the wall in the opposite corner of the room from where it entered.

Sizemore's plea was self-defense; and for a reversal he assigns two grounds; (1) that the instruction upon self-defense was erroneous; and (2) that the court erred in refusing to allow appellant to show that the pistol of Manual Templeton was not fired during the difficulty.

1. The instruction complained of, reads as follows:

"If you shall believe from the evidence that at the time the defendant, Logan Sizemore, shot at, wounded and killed the deceased, Grant North, if you shall believe from the evidence beyond a reasonable doubt he did so do, that the defendant was in danger of death or the infliction of some great bodily harm at the hands of Grant North, and that it was necessary or believed by the defendant in the exercise of a reasonable judgment to be necessary to so shoot at, wound and kill the deceased North in order to avert that danger, real or apparent, then you will find the defendant not guilty upon the grounds of self-defense, or the apparent necessity therefor.'

The complaint is that this instruction takes from the defendant the right given him under the law to judge of and act upon the appearances as he saw them at the time of the difficulty, and leaves that defense to the judgment of the jury, who were not present, and who were not called upon to exercise their judgment under the circumstances that Sizemore was required to act.

Under the conflicting testimony as to who was the aggressor, appellant was unquestionably entitled to an instruction giving the law of self-defense; and, since the jury ought, as far as possible, to judge of the facts surrounding the homicide from the standpoint of the defendant, such an instruction should make it clear that he was justified if the means used by him to protect himself appeared to him, at the time, to be necessary for that purpose.

The rule in Kentucky as to when a killing in self-defense is permissible, is stated as follows in 1 Roberson's Crim. Law & Proc., sec. 163:

"If one without fault believes, and has reasonable grounds to believe, that another is about to take his life, or do him great bodily harm, and he has no other apparent safe means of securing himself from the impending danger, he may take the life of the other, and is excusable upon the ground of self-defense and apparent necessity, although it may turn out that the appearances were false, and that there was in fact neither design to do him serious injury, nor danger that it would be done. It is not necessary, in order to excuse a homicide on the ground of self-defense, that there should be *actual* immediate impending danger. It is sufficient if the slayer believes, and has reasonable grounds to believe, that there is immediate impending danger, and that he has no other apparent and safe means of escape, although the supposed danger has no existence. The proper inquiry always is, what was the danger as it appeared to the defendant, and not what the danger actually was in the judgment of the jury."

The rule as above stated is supported by the decisions of this court in Coffman v. Commonwealth, 10 Bush, 496; Holloway v. Commonwealth, 11 Bush, 344; Munday v. Commonwealth, 81 Ky., 233; Cockrill v. Commonwealth, 95 Ky., 22, and many other cases.

It is easily apparent that the instruction complained of violates the rule above announced, because it leaves with the jury the determination of the fact of appellant's danger when he shot, instead of leaving it with the appellant.

We are not without direct precedents from this court upon this question.

In Austin v. Commonwealth, 28 Ky. L. R., 1087, 91 S. W., 267, the instruction read as follows:

"No. 3. The court instructs the jury that if they believe from the evidence that at the time that accused struck Reuben Satterfield a blow or blows, that caused his death, if he did strike him a blow or blows with a stick or bludgeon, and that said blow or blows directly caused said Satterfield's death, the defendant believed, and had reasonable grounds to believe, that he was in impending danger of death or great bodily harm at the hands of said Satterfield, and that he had no means of

avoiding such danger or apparent danger, they will acquit him.''

In condemning this instruction, the court said:

''The instruction is open to another serious objection: It deprives the accused of his judgment in the matter of safely averting the real or apparent danger to himself, and rests that question solely with the jury. It might have been that he could have safely averted striking decedent. In the light of subsequent events, and sitting quietly in judgment on the matter, with ample time to weigh and reflect upon the whole situation, the jury might well have concluded that the accused had a safe way of avoiding or averting the danger (real or apparent) to him. But that was not the correct test: It was, whether there was a safe way, as it then appeared to the accused in the exercise of a reasonable judgment, to have averted striking or killing Reuben Satterfield. The jury, instead of viewing the situation wholly from their point of view, should have been instructed to consider it from the situation, and under the circumstances in which the accused was then placed. (Bohannon v. Commonwealth, 8 Bush, 482; Holloway v. Commonwealth, 11 Bush, 350; Pace v. Commonwealth, 89 Ky., 204; Austin v. Commonwealth, 19 Ky. Law Rep., 474; Utterback v. Commonwealth, 22 Ky. Law Rep., 1011; Barnes v. Commonwealth, 22 Ky. Law Rep., 1802).''

In the Austin case the court further indicated that the following instruction should have been given instead of instruction No. 3 above condemned, to-wit:

''If the jury believe from the evidence that at the time the deceased struck and killed Satterfield, if he did so, he had reasonable grounds to believe, and did in good faith believe, that he was then in danger of losing his life or suffering great bodily harm at the hands of Satterfield, and there appeared to the accused, exercising a reasonable judgment at the time and under the circumstances, no other safe means of avoiding the impending, real or apparent danger, then in such case the accused had the right to strike in his necessary self-defense, and if the killing of Satterfield occurred under such circumstances, then the jury should acquit the defendant.''

The precise question was again before the court in Cleveland v. Commonwealth, 31 Ky. L. R., 115, 101 S. W., 931, where the court said:

"A reversal is also sought upon the grounds that the court erred in instruction number seven, which reads as follows:

" 'Although the jury may believe from the evidence beyond a reasonable doubt that the defendant, Arthur Cleveland, shot and killed the deceased, yet if they believe from the evidence that at the time the defendants or either of them shot and killed the deceased, the deceased was then and there about to inflict upon them or either of them death or some great bodily harm, and that to shoot the deceased was necessary, or was believed by the defendants, or either of them, in the exercise of a reasonable judgment to be necessary, in order to protect themselves, or either of them, from said danger, real, or to the defendants apparent, you will find the defendants not guilty, upon the ground of self-defense and apparent necessity.'

"The objection to this instruction is that it left to the jury, and not to the defendants, to say whether or not they believed that the deceased was about to inflict upon them, or either of them, some great bodily harm. In cases of this character the question is not what the jury believes, but what the accused in the exercise of a reasonable judgment believed at the time of the homicide. The jury might not believe from the evidence that at the time the deceased was killed the accused believed the deceased was about to inflict upon him some great bodily harm, and yet the defendant might have so believed. This identical question has been determined by this court in the cases of Ellis v. Commonwealth, 30 Ky. Law Rep., 348; Dossenbach v. Commonwealth, 30 Ky. Law Rep., 749; and Austin v. Commonwealth, 28 Ky. Law Rep., 1087, in which an instruction in all respects similar to this was condemned, and it was held to be reversible error."

In that opinion the court further indicated what would have been a proper instruction, following the instruction directed to be given in the Austin case.

From these authorities it follows that the court erred in instructing the jury upon the law of self-defense. Upon another trial the instruction upon that issue should follow the lines pointed out in the Austin and Cleveland cases, *supra*.

2.  Appellant further insists that the court erred in refusing to allow him to show that the pistol of Manual

Templeton was not fired during this difficulty. Lawton Templeton, a brother of Manual Templeton, who was shot at the same time, testified that Manual had in his possession a 38 Smith & Wesson Special of precisely the same make as the one used by North. There was also evidence tending to show that Manual Templeton was standing near the lower end of the porch where North was standing at the time the latter was killed, although the testimony upon this subject is conflicting.

It was the theory of the Commonwealth that North did not fire upon Sizemore, but that North was killed without provocation, and that the bullet which went through the wall of the house was fired from the pistol of Manual Templeton. The defendant offered to show by Hiram Hensley that after the killing he examined the pistol of Manual Templeton and found it contained five loaded cartridges, and had not been fired at all in the difficulty. The court, however, sustained the Commonwealth's objection to the admission of this testimony, and excluded it. Sizemore testified that North fired the first shot; and that there was a shot fired from the direction of North's position appears from the bullet hole in the wall, and the bullet which lodged in the opposite wall.

There was also testimony tending to show that one chamber of North's pistol had been discharged, while the offered testimony of Hensley was to the effect that Templeton's pistol had not been fired at all.

The question for decision relates to the relevancy of the testimony of Hensley, as above indicated.

In Stephen's Digest of the Law of Evidence, Article 3, page 43, it is said:

"Facts which, though not in issue, are so connected with a fact in issue as to form part of the same transaction or subject-matter, are deemed to be relevant to the fact with which they are so connected."

While we do not of course, undertake to pass upon the weight to be given this evidence, we think it was competent under the circumstances, and that the court should have admitted it.

Judgment reversed for a new trial.