## Rogers v. Commonwealth.

(Decided December 18, 1914.)

Appeal from Nelson Circuit Court.

1. Evidence—Res Gestae.—To render a statement part of the res gestae it is not essential that it should be uttered in the presence of the accused. It is only necessary that it be contemporaneous with or immediately subsequent to the exciting cause, and while the party is laboring under the strain of the circumstances.

2. Evidence—Res Gestae.—The rule of res gestae is the same in both civil and criminal cases.

3. Evidence.—Where accused was arrested in another State it is not competent for him to prove that he returned to this State without requisition for trial.

NAT W. HALSTEAD, E. N. FULTON and OSSO W. STANLEY for appellant.

JAMES GARNETT, Attorney General; OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appellant was indicted charged with the murder of Charles Howard. He was convicted of manslaughter, and adjudged to serve a term of from two to twenty-one years in the penitentiary. The offense was committed at a crap game near Bloomfield, some time in October, 1910, and about midnight. The game was in progress near the pike, and, as estimated by the witnesses, from 25 feet to 60 yards distant. The deceased, with his wife and brother-in-law, was riding in a buggy on their way home, and, discovering the game while passing, he left his wife in the buggy and went over to engage in it. All the witnesses and participants are negroes. Appellant had lost at a throw of the dice, and rising from the ground began to swear pretty vigorously about it. The

deceased remonstrated with him; told him his wife was nearby in a buggy, and requested him to keep quiet on her account. Appellant's cursing and abuse was then directed more particularly to the deceased.

It was deceased's turn to throw the dice. With the winnings in his left hand and dice in the other, and while on his knees in the attitude of making the throw, he said to appellant, who was then standing a few steps away from the circle: "I know you have got a gun, and if you don't quit, I will get up and make you eat it." Soon after this statement—the witnesses estimate it from a moment to ten minutes—the appellant moved back two or three steps, and with his pistol, which he seems to have drawn in rising from the game, shot deceased while he was still on his knees in the attitude of throwing dice. The bullet entered his neck from the left side, and just under his ear, and from this wound he died. The appellant does not testify, but introduced four witnesses who saw the affair. Two of them say that the deceased was reaching to get his pistol, which was lying on the ground to his right, and that he also made an attempt to get up. These two witnesses are positive they saw the pistol. Another witness says that he saw something "shiny" on the ground, but did not know whether it was a pistol or bottle. His other witness did not see any pistol or anything resembling it, but says that at the time he was shot the deceased was making a motion as if to get up.

The Commonwealth introduced four witnesses who were present, and they say that deceased did not have a pistol on the ground or upon his person, and made no threatening move.

The appellant urges four grounds for reversal. The first is, that the court permitted deceased's wife, Lillian Howard, to give certain incompetent evidence. She said that, from her place in the buggy, she could hear all the swearing, and that immediately the shot was fired her brother told her to come quick, and she "rushed up there and says, 'Charlie, why didn't you get out of the way?' and he said, 'Lillian, I didn't know he was fixing to shoot me.'" The appellant insists that this remark was incompetent and prejudicial, because it was a mere narration by the deceased of a past occurrence, and no part of the *res gestae*. At the time the remark was made the appellant and all of his associates had fled, and no one heard it but the witness. The Commonwealth relies

upon the case of Daniel v. Commonwealth, 154 Ky., 601, and quotes the following from page 608 of the opinion:

"The statement made by deceased to his mother, who ran to him immediately that he was shot, might well have been admitted as a part of the *res gestae.*"

The court was considering its competency as a dying declaration. The deceased had been shot from ambush, and the Commonwealth claimed that he recognized his assassins, and told their names to his mother.

Quoting again from the opinion:

"He told Mary Gabbard, his mother, who was the first person to reach him, that he was killed, that he was going to die, and that Jerry Rice and Bradley Daniel had shot him."

The statement was admitted and held by this court to be competent upon the rules of evidence applicable to dying declarations, and added might well have been admitted as a part of the *res gestae.*

In all probability, in the instant case this was a dying statement, but there is no proof that he so considered it. If he ever uttered another word, the record does not show it. While he lived from midnight Saturday until Monday morning, and the physician says he was paralyzed and his case hopeless from the start, yet that fact was never made known to him.

While there is some slight conflict in the evidence as to the distance between the witness and the place where the shooting occurred, varying all the way from 25 feet to 60 yards, yet, as soon as the shot was fired, the witness ran to the place, and she must have reached there in a time so short as to give the wounded person no time for reflection or to recover from the excitement, and the statement must, therefore, be regarded as impulsive and instinctive. Considering the rules of evidence with reference to *res gestae,* Wigmore in his work on evidence, Section 1750, says:

"The utterance must have been before there has been time to contrive and misrepresent, i. e., while the nervous excitement must be supposed still to predominate and the reflective powers to be yet in abeyance. It is to be observed that the statements need not be strictly contemporaneous with the exciting cause, they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and be dissipated."

Also Wharton on Evidence, Section 262:

"Declarations which are the immediate accompaniments of an act are admissible as part of the *res gestae;* remembering that immediateness is tested by closeness, not of time, but by casual relation."

The utterance relates to the circumstances of the occurrence just preceding it. Otherwise it would not be competent as a part of the *res gestae,* and claim of appellant's counsel that it relates to a past circumstance is not, therefore, accurate. His argument, taken literally, would destroy the *res gestae* rule. As soon as the shot was fired the appellant and the participants in the game fled, and as they were leaving, the witness came to the place. It has never been held, as an essential to make a statement part of the *res gestae* that it should be uttered in the presence or hearing of the accused. It is only necessary that it be contemporaneous with or immediately subsequent to the exciting cause, and, while the party is laboring under the excitement and strain of the circumstance. As has been frequently said, each case must depend upon its own circumstances and there can be no definite and fixed limit of time.

The case of Commonwealth v. Hargis, 124 Ky., 372, holds admissible, as a part of the *res gestae,* evidence of a witness who testified that he "heard the shots and that Cockrill walked a few feet and fell, and immediately the witness went to him, when the statement was made." Norflect v. Commonwealth, 17 Ky. L. R., 1137; Hughes v. Commonwealth, 19 Ky. L. R., 497; Shotwell v. Commonwealth, 24 Ky. L. R., 255.

The same principles apply to the admissibility of *res gestae* in both civil and criminal cases. In the case of C. N. O. & T. P. Ry. Co. v. Evans, 129 Ky., 159, the subject is discussed and numerous cases cited to illustrate the rule, where the statement was made under circumstances similar to this.

We are of the opinion that the court did not err in admitting the evidence. But, in any event, the appellant was not prejudiced. It is admitted that appellant "was fixing to shoot him," and that he did shoot him. The effect of the statement is that had the deceased known appellant was fixing to shoot him, he would have gotten away. If, in fact, he suspected appellant's purpose, the result was not affected, for, according to appellant's witnesses, Howard made no move towards his pistol until appellant was on his feet and prepared to shoot. The

jury gave him the lightest punishment, while the proof warranted more.

Certain evidence of the physician who examined the wound and, from the direction of the bullet, undertook to give an opinion as to the relative positions of the parties, was objected to as incompetent. But the court cured the error by excluding that evidence before the case was submitted to the jury.

The third complaint arises from these circumstances: The Commonwealth proved that the appellant fled as soon as he fired the shot and remained a fugitive until he was arrested in Ohio, some three years afterwards. The appellant desired to prove by the Kentucky sheriff who went to Ohio after him, that he came back without requiring a requisition. The court held this evidence incompetent. We think this was the correct ruling. It would have been just as competent for the appellant to show that he submitted to arrest without physical resistance. Whether he submitted to arrest peaceably or suffered the officers to bring him back without requisition are alike immaterial. The fact remains that he fled and was brought before the court under arrest.

We see no prejudicial error in the rulings of the court with reference to argument of the Commonwealth's attorney. Some objections to it were sustained and others overruled. In argument counsel on each side should confine themselves to the evidence and the law of the case, but when questionable remarks of one side are presented to us, and the remarks appear to be in reply to questionable argument of the other side, the judge of the lower court who heard both sides is in a better position to consider their propriety, and, unless they plainly transcend the bounds of reasonable argument, we are not disposed to disturb the verdict.

We have also considered appellant's objection to the 6th instruction. On the ground of self-defense an acquittal is directed, if, at the time of the shooting, the defendant believed and had reasonable grounds to believe he was in danger of losing his life or receiving great bodily injury at the hands of Howard, and that the defendant used such means "as were reasonably necessary or as seemed to him, in the exercise of a reasonable discretion, to be necessary to avert such danger." Appellant complains that this instruction made the jury the judges of the reasonableness of the means of averting the injury. He refers to an instruction approved by this

court in the case of Austin v. Commonwealth, 28 Ky. L.
R., 1087 (91 S. W., 267); and cited in the case of Size-
more v. Commonwealth. 158 Ky., 496. We perceive no
material difference in the instructions. In the Austin
case the word "appeared" is used where the word
"seemed" is used in this case. In one case the safe
means of escape is made to depend on how it *seemed* to
appellant, and in the other how it *appeared.*

The judgment is, therefore, affirmed.