## Booher v. Commonwealth.

(Decided Jan. 12, 1937.)

W. T. PHILLIPS for appellant.

B. M. VINCENT, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Ratliff—Affirming.

The grand jury of Clinton county returned an indictment against Robert Booher and Clyde Melton charging them with the crime of housebreaking. The indictment charged that they broke into a smokehouse used in connection with a dwelling house and stole and carried away therefrom meat and lard of the value of $12, the property of Luther Hay.

No motion was made by either of the defendants for a separate trial, and they were tried jointly, convicted and sentenced to the penitentiary for a term of three years each. Melton's sentence was probated by the court and Booher filed motion and grounds for a new trial, which were overruled, and he appeals.

For a reversal of the judgment it is urged that the court erred in overruling Booher's motion for a peremptory instruction; that the verdict of the jury is excessive and against the law and evidence; and that the court erred in overruling his motion and grounds for a new trial on the grounds of newly discovered evidence.

The housebreaking and theft occurred on Saturday night, August 18, 1935, and was not discovered until Sunday morning, when Hay notified Finis Marsh, the sheriff of Clinton county, and a constable, Ed Appleby, and the officers and Hay immediately set out to investigate the offense and to apprehend the offenders. On the outside of the smokehouse near a window, shoe prints or tracks of two persons were found and Hay followed these tracks down the road to where the offenders had crossed a field to the main road leading toward the homes of the defendants. One of the tracks showed heel-iron plates on the shoes. The sheriff went to the home of Booher but found nothing; the constable, went to the home of Melton and found in the attic or loft of his house a piece of meat wrapped in a grass sack which was identified by Hay as his meat, and was about half of the meat that had been stolen. It appears that Hay had in his smokehouse a number of fertilizer sacks which had been washed and used for bagging wheat and the sack in which the meat was wrapped contained a little of the wheat, and the sack was identified by Hay as well as the meat. Hay testified that the meat

which had been stolen was cut from the side of a 300-pound hog and he had extracted the tenderloin from the side of this piece of meat and the meat found in Melton's possession corresponded with the description of the stolen meat. It further appears that the meat had been hung by a wire running through the end of it and the offenders had cut the meat from the wire, leaving a small portion of it attached to the wire. The piece of meat found in Melton's possession was fitted to the piece remaining to the wire and the two pieces fitted exactly.

Further evidence tending to connect the defendants with the offense charged was that they were seen together late Saturday afternoon about sundown on the evening or night the offense was committed. They were about one mile from Hay's place and traveling in that direction. A number of witnesses testified that Melton had been wearing shoes with heel-irons, which corresponded with the description of the tracks leading from the smokehouse in the direction of the homes of the defendants. However, there was no evidence tending to connect the tracks of the other person with Booher. This is, in substance, the evidence adduced in chief by the Commonwealth. Defendants had separate counsel, and counsel for appellant Booher moved the court to peremptorily instruct the jury to find him not guilty. The court overruled the motion and thereupon counsel for Melton introduced him to testify in his own behalf. He denied having any connection with the housebreaking or theft of the property and said that on early Sunday morning Booher brought the piece of meat found in his, Melton's, possession, and sold it to him. He said that the meat was wrapped in a grass sack and Booher told him that he was in hard luck and wanted to sell the meat and told him that the piece of meat weighed 15 pounds and he would sell it to him for $3, at a price of 20 cents per pound, and he purchased the meat upon Booher's statement without weighing it, and in this he was corroborated by Hershel Groce and Fannie Groce, who claimed that they were present at the time, and their testimony, in substance, was the same as that of Melton, relating to the purchase of the meat. Melton also introduced Ryan Dicken, who testified that he lived about a mile and a quarter from Booher's home and that on Sunday morning after the meat had been stolen

Booher sent him word by his, Dicken's boy, that he, Booher, wanted to see him and for him to come over to his place, and he started to Booher's home and met him coming toward his place without his shoes, and Booher asked him if he would care to go to his place and get his shoes for him, which he refused to do, and Booher then asked him to let his boy go get his shoes, which Dicken also refused. This was all the evidence offered by Melton.

Booher, testifying in his own behalf, admitted that he was in company with his co-defendant, Melton, on Saturday afternoon at the place and time testified to by Commonwealth witnesses, but said that they separated at the forks of a creek and he went to his home and stayed there all night, and knew nothing about the housebreaking and theft of the meat and had no connection with it whatever. He also denied that he sold to Melton the meat found in Melton's possession, or any meat, and denied that he was at Melton's place that morning. He was not asked about the incident testified to by the witness Dicken in reference to being barefooted a mile and a quarter from his home and trying to get Dicken or his boy to go get his shoes. He offered no explanation or denial of this incident. He admitted that he had theretofore been convicted of a felony—hog stealing. He further stated that on August 25th, one week after the theft was committed, he left his home and went to the state of Arkansas and stayed five weeks and then returned to his home in Clinton county and then left again and went to Indiana and stayed there until he was indicted in March, 1936, for the offense charged, and brought back to Kentucky. He admitted that he had heard about Hay's meat having been stolen before he left.

Booher's 13 year old son and a daughter (the latter's age not being disclosed by the record) testified that their father came home about dark on the night the offense was committed and went to bed at an early hour and remained at home all night and was there on the next morning.

It is insisted for Booher that at the time the Commonwealth closed its evidence in chief there was no evidence tending to connect Booher with the crime charged. The evidence for the Commonwealth up to

that time established the guilt of Melton beyond any reasonable doubt, and it was shown that Booher was seen in company with Melton about one mile from Hay's premises where the offense was committed, late in the afternoon at about sundown, and they were traveling in the direction of Hay's place and the offense was committed on that night. There were tracks or footprints of two people leading from the smokehouse, and it is clearly established that two persons had participated in the crime. It being established that Melton had a companion in the perpetration of the crime and Booher having been seen with him at the time and place stated above and his whereabouts not being accounted for thereafter, furnished sufficient circumstantial evidence to take the case to the jury. It is the well-known rule that in criminal cases where there is any evidence, even a scintilla, it is proper to submit the case to the jury. We do not think the court erred in overruling appellant's motion for a peremptory instruction.

If it be condeded that had there been no further evidence produced tending to connect Booher with the crime, the evidence produced in chief for the Commonwealth might not have been sufficient to sustain the verdict as against Booher, yet, in view of the evidence developed by his codefendant and his witnesses, we think the evidence on the whole case was sufficient to sustain the verdict against appellant. The story of Melton and his witnesses that he bought the meat of Booher and paid him $3 in cash therefor without weighing or examining it is not very plausible. Conceding that Booher brought the meat to Melton's place at the time claimed by him and his witnesses, it is most unreasonable that Melton would have paid Booher the price of the meat without having weighed it or examined it to ascertain the quantity and quality thereof. Even if this occurred, the jury may have believed that the transaction was a sham in pursuance to a previous understanding as to the division of the stolen meat and that both Booher and Melton participated in the crime.

Booher admitted that about a week after the offense was committed and after he had heard about the meat being found in Melton's possession, he left the state and went to the state of Arkansas and stayed five weeks. No indictment having been made against him at that time, he returned to his home, but within a

short while he again left the state and went to the state of Indiana. His conduct in fleeing soon after the offense was committed was a competent circumstance for the consideration of the jury, from which guilt might be inferred. True it is that at the time he fled he had not been charged with the offense. But it is the rule that the Commonwealth may show that one charged with an offense fled the country or the jurisdiction of the court even before any charges were formally preferred. Rogers v. Comm., 161 Ky. 754, 171 S. W. 464; Plummer v. Comm., 1 Bush (64 Ky.) 76. Perhaps the jury applied the biblical philosophy "The wicked flee when no man pursueth." Proverbs 28.1. And a further significant circumstance is that Booher made no explanation or denial of being a mile from his home without his shoes early on the morning after the offense was committed, and trying to get other people to go to his home and get his shoes for him. This circumstance may warrant the inference that he was afraid to go to his home and he was then contemplating fleeing. He also admitted that he had been previously convicted of hog stealing, and the jury no doubt took this fact into consideration in determining the credibility of his testimony. Under all the evidence, direct and circumstantial, a jury of the community who faced the witnesses and the accused on the trial believed and found that appellant was guilty. We do not think that we are authorized to disturb the finding of the jury.

The next complaint is that the court should have granted Booher a new trial on the grounds of newly discovered evidence. The alleged newly discovered evidence consisted of an affidavit of Booher stating "that he has learned since the trial of the case that the witness, Hershel Groce, was procured to swear false in the trial and that in the presence of divers witnesses he has since demanded his pay for so doing."

It is seen that the affidavit does not state the names of the witnesses nor what the alleged witnesses would testify. If Groce swore falsely, Booher knew, or is presumed to have known, in what respect his testimony was false, and it was his duty to have set out in the affidavit such false statements and what he could prove by his alleged witnesses, in order that the court may determine the materiality and propriety of their evidence. The record shows, however, that on the hearing of the

motion for a new trial Booher offered to produce three witnesses to be examined, and the court overruled his motion. But there is nothing in the record tending to show the effect or purport of the testimony of such offered witnesses or wherein Groce swore falsely. Furthermore, Fannie Groce testified to practically the same state of facts as testified to by Hershel Groce, and there is no claim that Fannie Groce testified falsely, and if Booher could have proven by his alleged witnesses that Hershel Groce's testimony was false, such would not have disproved the testimony of Fannie Groce, the truth of which is not questioned in the affidavit filed in support of the motion for a new trial. If her evidence is true, it follows that Hershel Groce's evidence is likewise true. It follows that appellant's showing for a new trial is insufficient.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.