## Rose v. Commonwealth.

Oct. 23, 1942.

S. Monroe Nickell and O. J. Cockrell for appellant.

Hubert Meredith, Attorney General, and Frank A. Logan, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Neville Rose appeals from a judgment sentencing him to confinement in the penitentiary for life for the murder of Leslie Childers. The first ground urged for reversal, that the verdict was flagrantly against the evidence, necessitates a statement of the substance of the evidence.

On the morning of the killing, which took place about 1:30 P. M. on Sunday, November 20, 1941, the appellant, who lived on the farm of his father, Grover Rose, but in a separate house, secured a .22 rifle at the home of his father and went rabbit hunting. During the morning the deceased and a cousin, Sam Childers, had been touring around the countryside, drinking considerable moonshine liquor during the course of their travels. After eating dinner they continued their travels on mule back, the mule ridden by the deceased apparently being young and fractious. Eventually they arrived in the vicinity of the Rose farm at a time when the elder Rose, who had been engaged in watering his stock, was returning to his house by way of the county road. The appellant at this time, returning from his rabbit hunt, was also nearing the county road on which his father was walking. The mule riders rounded a sharp curve in the county road and the mule ridden by the deceased either ran into Grover Rose or very close to him and he grabbed the bridle. According to Sam Childers, the deceased's mule went on

a few steps but the elder Rose stopped him and as appellant came into the road his father turned the mule loose and jumped out of the way as Neville fired. Also, according to this witness, no conversation occurred or, at least, he did not hear it. This, of course, is rather improbable. According to appellant and his father, the latter, when deceased's mule stopped, asked deceased what he meant and deceased, with an oath, announced that he was out to clean up Rock Lick. Grover Rose then told them to go on and the deceased announced, with an oath, that he was going to kill Grover Rose and put his hand in his pocket, whereupon Neville called out, ''Don't shoot Dad'' and the deceased cursed appellant and said ''I'll give it to you,'' whereupon Neville fired one shot with the rifle.

After the shot was fired the deceased slumped over on his mule, which went on up the road a short piece. The deceased fell off in the road where he lay for something like two hours before he died. Sam Childers says that he left because Grover Rose told him to do so or Neville would shoot him.

The appellant and his father both state that when the deceased put his hand in his pocket they could see the bulk of a pistol and a brother-in-law of the appellant testified that sometime after the shooting he went out to the point where the deceased was lying in the road and saw and felt the bulk of a pistol in his pocket while he was still alive. A sister of the appellant testified that from the house she saw Mildred Childers, a relative by marriage of the deceased, go to his body where he was lying in the road after he died and take a pistol from his pocket and put it in her dress bosom and tighten the belt. Another witness testified that he rode by the deceased after the shooting and saw the butt of a pistol in his right front pocket. But there was a conflict in the evidence as to the deceased being armed, evidence for the Commonwealth tending to show that he did not own a pistol and was not armed at the time of the killing. Mildred Childers flatly denied taking a pistol from his pocket and said she did not see any pistol about him. It may be added that the testimony of appellant and his father was corroborated by appellant's mother and sister who were standing near the Grover Rose residence.

We are far from convinced that the verdict was flagrantly against the evidence. While we are satisfied that

the deceased was not free from fault and that he probably cursed the elder Rose and engaged in some drunken, threatening talk, nevertheless there was a sharp conflict in the evidence as to whether or not the deceased was armed and the jury were at liberty to accept or reject the evidence introduced by appellant to the effect that the deceased made a gesture to draw his pistol. We have so many times announced our indisposition to interfere with the verdict of a jury in cases of this type that a repetition of authority would be superfluous. A consideration of all the evidence leaves us with no doubt that this was a typical case for the jury.

The next ground urged for reversal is improper argument of employed counsel for the Commonwealth who said to the jury, in commenting on the testimony of Jesse Moore, a witness for the Commonwealth, that "Jesse Moore has at all times since the indictment was made, at all conferences with the Commonwealth told the same story he told on the trial of this case." The witness had testified that the appellant came to the house of his father and got the rifle just a few minutes before the shooting. The bill of exceptions shows that the improper argument of employed counsel relied on for reversal was made in response to statements by counsel for appellant that Jesse Moore was making statements different from that made by Moore to counsel for appellant in the witness room. Appellant's counsel did not testify in contradiction of Moore. Thus, though it be conceded that the argument complained of would ordinarily have been improper, it was provoked, as certified in the bill of exceptions, by statements of counsel for appellant that the witness had made contradictory statements to them although counsel had not testified. This being true, appellant is not in the same advantageous position to complain as would be the case had his counsel not provoked the incompetent argument by first entering the field. Rogers v. Com., 161 Ky. 754, 171 S. W. 464; Welch v. Com., 189 Ky. 579, 225 S. W. 470; Cox v. Com., 290 Ky. 642, 162 S. W. (2d) 201. In any event, we are of the opinion that this argument was not sufficiently prejudicial to the appellant, when considered in the light of all the evidence in the case, to warrant a reversal even though it be conceded that it was erroneous.

The final ground urged for reversal is error in admitting incompetent evidence. This alleged error arose

as follows. Sam Childers testified for the Commonwealth that Grover Rose told him after the shooting that he had better go or Neville would shoot him. Appellant's counsel, on cross-examination, asked the witness when he first told that to anybody and the witness said he couldn't exactly say. On re-direct examination counsel for Commonwealth, repeating the question asked by appellant's counsel asked the witness if he made the same statement to the grand jury a few days after the killing and the witness answered in the affirmative. Without determining whether this line of interrogation was proper or improper in the circumstances, we are convinced that there was little in it to operate to appellant's prejudice, certainly not enough to warrant a reversal of the judgment. The matter being dealt with here was merely a statement by appellant's father after the shooting which had little, if any, bearing on the issues before the jury. Counsel for appellant frankly admit the insufficiency of this ground alone for a reversal but urge it as a contributing factor when taken into consideration with the other grounds. It is our conclusion, however, that none of the grounds urged, either singly or in combination with other grounds, warrants a reversal. On the whole it appears that the appellant had a fair and impartial trial.

Judgment affirmed.