## Belcher v. Commonwealth.

(Decided October 4, 1918.)

### Appeal from Pike Circuit Court.

1. Criminal Law—Trial—Submission to Jury.—Where there is any evidence showing the guilt of the accused, the case should be submitted to the jury.

2. Appeal and Error—Failure to Object to Admission of Evidence.—It is a thoroughly well settled rule of practice that an appellant cannot, upon appeal, complain of the admission of testimony to which he did not object upon the trial; and, although the court may have admitted testimony over appellant's objection, he cannot complain unless he then excepted to the ruling of the court.

J. J. MOORE, W. A. DAUGHERTY and W. K. STEELE for appellant.

CHARLES H. MORRIS, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, and R. MONROE FIELDS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Moscoe Belcher, and Spurlock Bingham, were jointly indicted for the murder of Nelson Matney. Belcher was tried separately, found guilty of wilful manslaughter, and sentenced to serve a term of 21 years in the penitentiary. He appeals and assigns

two grounds for a reversal; (1) that the verdict is against the weight of the evidence, and is without evidence to support it; and, (2) that the court erred in admitting the testimony of John A. Slone.

The tragedy occurred on Sunday, December 16th, 1917, about 6 o'clock p. m., when Belcher and Bingham visited the residence of Nelson Matney, in Pike county. Belcher and Jane Matney, the daughter of Nelson Matney, were sweethearts and were engaged to be married. Matney had objected to Belcher as a suitor for his daughter, although it does not clearly appear that he had actually forbidden him visiting her at his home. When Belcher and Bingham approached Matney's residence, he was milking a cow in the barnyard, near by. Matney and Bingham were brothers-in-law and had not been on speaking terms for several years. As Belcher and Bingham passed Matney in the barnyard they spoke to him, and he returned the salutation.

Belcher entered Matney's residence and passed through the house into the kitchen, where Jane Matney was preparing supper. Immediately thereafter Nelson Matney followed him into the kitchen and asked him if he had any business there, whereupon Belcher answered, in effect, that he "had a little." Nelson Matney then ordered Belcher to leave the house; and, according to Bert Matney, a twelve year old boy who was present, Belcher answered that he "did not have to go out." Thereupon Matney returned to the next room to get his shotgun, and Belcher left the house by the kitchen door and walked rapidly, or ran, around the side of the house and through the front gate into the road. In the meantime Nelson Matney had procured his shotgun, and had either followed Belcher around the house, or had gone through the house and out the front door, reaching the front yard about the time Belcher passed through the gate. Belcher testified that Matney came out on the front porch with his shotgun "broken" and laying across his left arm, and as he knew Matney could not shoot him while his gun was "broken," Belcher started up the road.

From this point the testimony is widely contradictory. Jane Matney and her twelve year old brother, Bert Matney, state that their father, Nelson Matney, was standing at the front fence quarreling with Spur-

lock Bingham; that he was not looking toward Belcher, who was walking up the road; that his gun was pointed toward the river and toward neither Belcher nor Bingham; and that while he was standing in that position Belcher drew his pistol and fired three shots at Nelson Matney, killing him almost instantly.

According to Belcher's story, he had retreated up the road; that Matney walked about twenty feet in the same direction but inside his yard fence, and then laid his gun across the fence to shoot him; and that he then fired to protect himself from Matney's attack. It is shown without contradiction that Matney's gun was loaded when it was picked up after his death, and that the hammer was uncocked. It is not claimed by anybody that Matney fired his gun. Belcher is supported, in a measure only, by Bingham, who says that he was not quarreling with Matney; that he did not see Belcher shoot; and further, that Matney did not have his gun against his shoulder, but had it in his hands when he was shot by Belcher.

1. Under this proof, it is contended the verdict is against the weight of the evidence, and is without any evidence to support it. We do not so read the record. On the contrary, under our view of the case, there is ample evidence to sustain the verdict. Indeed, the weight of the testimony is to the effect that Belcher fired upon Matney without justification, although there is Belcher's testimony to the contrary. However that may be, there being a sharp conflict in the testimony as to who was the aggressor, the finding of the jury will not be disturbed. Where there is any evidence showing the guilt of the defendant, the case should be submitted to the jury.

2. Neither do we think there was any error in admitting the testimony of Slone. Slone kept a store in the immediate neighborhood, and Belcher and Bingham had met there immediately before they went to Matney's residence. Slone testified that Belcher and Bingham, and perhaps others, were drinking whiskey, "hot drops," and dancing at his store before they left for Matney's home. It is insisted that the court erroneously admitted this testimony, and that the Commonwealth's attorney, using this testimony of Slone as a basis, repeatedly called Belcher a "pistol toting," "hot drop" drinking school teacher, thereby prejudicing him in the

eyes of the jury. But, waiving the question of its competency, appellant is in no position to complain of the trial court's decision, for several reasons. In the first place, not only was there no objection by the appellant to the material part of this testimony, but appellant's counsel cross-examined Slone at length upon all of this testimony, which is now objected to, causing him to repeat it to the jury. Furthermore, the same facts relating to the conduct of Belcher and Bingham at Slone's grocery were shown by another witness, John T. Justice, without objection.

It is a thoroughly well settled rule of practice that an appellant cannot, upon appeal, complain of the admission of testimony to which he did not object upon the trial; and, although the court may have admitted the testimony over appellant's objection, he cannot complain unless he then excepted to the ruling of the court. Dalton v. Dalton, 146 Ky. 18; McGee v. Vanover, 148 Ky. 737; Fish v. Welch's Admr., 157 Ky. 17; Harris v. Commonwealth, 163 Ky. 781.

There is no objection to the instructions; on the contrary, it is conceded that they fully and fairly submitted every phase of the case to the jury. In our opinion appellant has had a trial unusually free from error.

Judgment affirmed.