## Spicer v. Commonwealth.

(Decided June 8, 1923.)

### Appeal from Breathitt Circuit Court.

1. Homicide—Evidence Held Sufficient to Sustain Conviction for Murder.—In a prosecution for homicide, where defendant admitted killing deceased, evidence of declarations by defendant which would justify an inference of a difficulty between the two before the shooting, when considered with the physical surroundings, held sufficient to sustain a conviction of murder, notwithstanding his testimony that he killed deceased when he suddenly came upon him while the latter was assaulting defendant's wife.

2. Criminal Law—Issue of Guilt Submitted to Jury if Any Evidence Tends to Show it.—Where there is any evidence tending to establish the guilt of the defendant, and from which there may be deduced fair and just inferences tending in that direction, and supported by physicial facts and circumstances,' the case must be submitted to the jury.

3. Homicide—Refusal of Instruction on Justification in Apparently Necessary Defense of Wife Against Criminal Assault Held Error. —Where defendant testified that he shot deceased when he came upon him while deceased was standing over defendant's wife, who was lying on the ground,' under circumstances indicating a criminal assault upon her, it was error to refuse a requested charge to acquit defendant if he believed and had reasonable grounds to believe decedent had or was about to commit a criminal assault upon defendant's wife, and there appeared in the exercise of reasonable judgment no other safe way of averting the assault except to shoot the deceased; the other instructions only applying to self-defense of accused and his wife, and not embracing the right to prevent a criminal assault upon the wife.

A. H. PATTON, CHESTER BACH and A. S. JOHNSON for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant was indicted charged with the murder of Harve Potter, and upon his trial was found guilty and sentenced to life imprisonment.

The two grounds for reversal are: (a) because of the court's error in refusing to sustain appellant's motion for a directed verdict of not guilty under the evidence; and (b) because of the failure of the court to authorize

in its instructions an acquittal of defendant if they believed from the evidence that defendant at the time of the shooting and killing of Potter believed and had reasonable grounds to believe Potter was about to commit a criminal assault upon the person of his wife.

Appellant himself is the only eye-witness who testified about the killing and the facts leading up to it; but between the time of the killing late one afternoon and the next morning when he voluntarily surrendered at the county jail he had talked to two persons about the killing, and the evidence of those two persons as to his statements about it is the only direct evidence adduced by the Commonwealth.

Appellant lived about seven miles from the county seat and on a small branch or tributary of Cane creek in Breathitt county, his house being up that tributary some four or five hundred yards from the main stream. On December 6th he had gone in the morning to the county seat to attend circuit court and on his way had seen and spoken to the decedent and another a short distance from his home. He returned to his home that afternoon about four or four-thirty. As he approached his home he saw his wife a short distance therefrom getting some stovewood from a drift pile on his own farm; he requested her before coming to the house to go to a garden spot on their place some little distance away and get some potatoes, and when he reached the house he sent to her a bucket by one of his small children in which to bring the potatoes. He then unhitched his mule and put some corn in a sack, presumably with the purpose of feeding the animal. About that time he heard the voice of his wife screaming and hallooing: "Run here, run here, run quick," and says she repeated that some five or six times and then stopped for a short time, and then again repeated these and similar calls. He ran to the house and went to get his pistol where he had left it but found it had been removed; he then took a shotgun from a rack and immediately went hastily toward where his wife was along a little path which was the nearest way. When he got within fifteen or twenty steps he saw a man and his wife together and says:

"I was standing right up and he was right here with my wife that way, over her, and I seen him striking her with his hand and I hallooed 'Turn her loose,' and whenever I got there he raised and I shot at him, I shot at his

head, I didn't want to shoot too low; I said, 'Turn her loose;' as he straightened I fired.''

The right arm of the dress she wore was torn and the wife complained at the time that her arm was sore.

At another place in his evidence the defendant, when asked if he had seen Harve Potter anywhere up there near his crib, answered: No, sir; I did not see him there, never seen him until I went down and shot him off of my wife.'' Again, on cross-examination, when asked by counsel for the Commonwealth if Harve Potter had not come around a certain crib or shed when he shot him, he answered: ''No, sir; I never seen Harve Potter until Harve Potter was right up here, where he was on my wife; he might have stepped a step or two after I shot him.''

This is the whole evidence showing what occurred at the time of the homicide except the evidence of two witnesses for the Commonwealth, Fed White and Corbett Lovely, to whom appellant had talked about the killing between its occurrence and his surrender at the jail the following morning.

White testified that appellant told him he had killed Potter with a shotgun loaded with either buckshot or some kind of small shot; that he killed him near appellant's own home; that he came home and his wife was crying and said Harve Potter was there and said something about killing him, and he said he sprang and grabbed his gun and as Harve came around the corner he killed him. On cross-examination he said appellant said his wife was crying and told him Harve Potter was there and not to come in or something, witness could not remember exactly what; that appellant said he had been over to town and came back and hitched his horse or took it to the barn, and he heard his wife say something and went down there and she was crying, and that Harve Potter was there and that about that time he saw Harve Potter come around the crib and he made for his gun; that ''He said something about his wife and said that was what he killed him over, is what he said about his wife, and his wife was crying, and he didn't say what he was doing to her or what he had, but he said that was what he killed him over.''

The witness, Corbett Lovely, who was deputy jailer, merely stated that when appellant came to the jail and gave himself up he remarked to appellant that he had

gotten into some trouble, and appellant said, "I am the man that done it."

In addition to this the Commonwealth showed that there had been an unfriendly feeling between appellant and decedent for some two or three years, which had grown out of appellant reporting decedent for having a moonshine still, and in addition the Commonwealth showed the nature of the ground and its relation to the roads and paths leading to it.

The defendant proved by several witnesses that his own character was good, and that decedent was a man of bad character.

Inasmuch as appellant admits he fired the shot which killed the decedent, and inasmuch as it is shown by the evidence of White that appellant made to him such statements as would justify the inference there had been a difficulty between the two before the shooting and such statements as might have been construed to show that appellant knew decedent was at or near his home before he came upon him, and as the nature of the ground and the physical surroundings might have indicated to the jury something which we cannot see from this record, we think the trial court did not err in refusing to give a peremptory instruction.

Where there is any evidence tending to establish the guilt of the defendant, and from which there may be deduced fair and just inferences tending in that direction, and supported by physical facts and circumstances, the case must be submitted to the jury. Pace v. Commonwealth, 170 Ky. 560.

But appellant justly complains of the failure of the court to instruct the jury in substance that if appellant believed at the time and had reasonable grounds to believe that decedent had, or was about to commit a criminal assault upon the person of his wife, or had or was attempting to take forcible possession of her person for the purpose of having carnal knowledge of her, and there appeared at the time to the defendant in the exercise of a reasonable judgment no other safe way of averting said criminal assault or attempted assault except to shoot and kill the deceased, then he had a right to shoot and kill him and the jury should acquit him.

The instruction as given in this case only applied to self-defense of appellant and his wife, and did not embrace in any way the right of appellant to shoot and kill

decedent if it was necessary or appeared to him at the time in the exercise of a reasonable judgment to be necessary to prevent a criminal assault by decedent upon his wife. Saylor v. Commonwealth, 97 Ky. 184, and Combs v. Commonwealth, 112 S. W. 658.

An instruction outlined in the latter case, when changed to suit the facts of this case, should be given upon another trial. The judgment is reversed with directions to grant the appellant a new trial and for further proceedings consistent herewith.