## McCurry v. Commonwealth.

(Decided October 24, 1924.)

### Appeal from Floyd Circuit Court.

1. Homicide—"Danger" to Accused, and "Means" which he Employs to Avert it, Need Not be "Actual" or "Actually" Necessary to Sustain Self-Defense.—"Danger" to accused, and "means" which he employs to avert it, need not be "actual" in one instance, or absolutely necessary in other, to establish killing in self-defense, as danger need only be apparent and means employed need only be apparently necessary in exercise of reasonable discretion.

2. Homicide—Instruction on Self-Defense Held Not Erroneous as Requiring Actual Danger and Means to Avert Actually Necessary.

instruction on self-defense held not erroneous as leaving to jury to determine whether accused was "actually" in danger, and whether means employed were "actually" necessary.

3. Criminal Law—Refusal to Postpone Conclusion of Trial Not Considered, where no Motion or Ruling Shown by Record or' Bill of Exceptions.—That court refused to postpone conclusion of trial until next morning cannot be considered on appeal, where it nowhere appears in record that any motion or ruling was made, except in affidavit filed in support of motion for new trial, and where failure of record to set out matter is not supplied by duly certified bill of exceptions.

4. Homicide—Verdict of Voluntary Manslaughter Held Not Flagrantly Against Evidence.—Verdict of voluntary manslaughter held not flagrantly against evidence.

5. Criminal Law—That Reviewing Court Might Not have Arrived at Same Verdict no Criterion of Justification of Verdict.—That reviewing court might not have arrived at same verdict as jury is not proper criterion by which justification of verdict should be measured.

6. Criminal Law—Reviewing Court Can Reverse Judgment as Flagrantly Against Evidence Only where so Greatly Against Weight as to Shock Conscience.—Under Criminal Code of Practice, section 281, Court of Appeals is authorized to reverse judgment as flagrantly against evidence only when it is so much against weight of evidence as to shock conscience, and it clearly appears that it was result of passion and prejudice.

A. J. MAY, EDW. L. ALLEN and JOHN D. CARROLL for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Upon his trial in the Floyd circuit court under an indictment charging him with murdering Dr. J. M. Williams, the appellant, Jack McCurry, was convicted of voluntary manslaughter and punished by confinement in the penitentiary for a period of five years, and by this appeal he seeks a reversal of the judgment upon three grounds, which are: (1) erroneous instructions; (2) failure of the court to postpone the trial until the arrival of a witness, and (3) that the verdict is flagrantly against the evidence, each of which grounds we will consider in the order named.

In support of ground (1), it is argued that the self-defense instruction, which was number 4 given by the court, was erroneous because (a), it left to the jury to determine whether the defendant, under the evidence,

was *actually* in danger and whether he properly chose the safety of the means which he employed to avert the danger to him from the hands of the deceased, when the proper submission should have been for defendant to determine the danger as it reasonably appeared to him and to select the safety of the means in the exercise of a reasonable judgment from the surrounding facts and circumstances; and (b), that it limited the force or means which defendant might employ or use, in averting the danger to him to that which was *actually* necessary in the estimation of the jury, and not what might have appeared to the defendant to be necessary in the exercise of his reasonable discretion or judgment. In support of these two criticisms, numerous cases from this court are cited and relied on and we suppose there are none to the contrary, since both the *danger* to the appellant and the *means* which he employs to avert it need not be *actual* in the one instance or absolutely necessary in the other; for if the danger was only apparent to the defendant in the exercise of a reasonable judgment, it would be sufficient to permit him to act in his self-defense, and in doing so he may employ such means to avert it, either actual or apparent, as appears to him in the exercise of a reasonable discretion to be necessary. Two comparatively recent cases from this court so holding, in which many others are referred to, are Sizemore v. Commonwealth, 158 Ky. 492, and Nichols v. Commonwealth, 196 Ky. 706. Indeed the right of the defendant to judge of the danger, as it appears to him in the exercise of a reasonable discretion, is so well settled both in this and other courts as to require no extension of this opinion or further citation of cases to support it. It is equally well settled that the safety of the means to be employed in averting the real, or to the defendant apparent, danger must be such as appeared to him in the exercise of a reasonable judgment or discretion to be necessary and need not be limited to such as would *actually* be necessary, as for instance flight, which necessarily follows from the right of defendant to judge of the extent of the danger and the means employed to avert it in the exercise of a reasonable judgment growing out of the appearances then and there present to him. Connor v. Commonwealth, 118 Ky. 497; Cook v. Same, 24 Ky. L. R. 1731, and Stephens v. Same, 20 Ky. L. R. 544. If, therefore, instruction number 4 withheld from appellant the right to exercise his reasonable judgment in either of the matters referred

to it was and is erroneous and the judgment should be reversed; otherwise not.

In order that the question may be plainly presented, we insert instruction number 4, which says:

> "Although the jury may believe and find from the evidence, beyond a reasonable doubt, that the defendant, Jack McCurry, in this county and before the finding of the indictment herein, shot and wounded J. M. Williams, from which shooting and wounding the said Williams died, yet, if they further believe and find from the evidence that at the time he did so shoot and wound the said Williams, he believed and had reasonable grounds to believe, that the said Williams was then and there about to inflict upon him death or some great bodily harm, and there appeared to the defendant no other safe means of averting the then real, or to the defendant apparent, danger, then the court tells the jury the defendant had the right to use such means as was necessary or as reasonably appeared to him to be necessary, but no more, to ward off the then real or apparent impending danger, even to the taking of the life of the said Williams; and if you so believe you should acquit the defendant on the grounds of self-defense and apparent necessity."

It will be seen therefrom that the safety of the means which defendant might employ in averting the danger was such as "appeared to the defendant," without even the qualification "in the exercise of a reasonable judgment," and which made the instruction more favorable to the defendant than the practice required. It will further be observed that the "danger" upon which the defendant, under the instruction, was authorized to exercise his right of self-defense was "the then real, or to the defendant apparent, danger," which demonstrates that the criticism of the instruction referred to relative to the character of danger is likewise unfounded.

But it is insisted that the instruction was erroneous in the use of the phrase, "but no more," thereby limiting the means which the defendant might employ to avert the real or apparent danger to him, and the case of Carroll v. Commonwealth, 26 Ky. L. R. 1083, is relied on in support of that criticism. There is, however, a wide difference between the condemned instruction in the Carroll case and the one given by the court in this one. The in-

struction in that case told the jury that the defendant "had the right to use such force at his command as *was* necessary, and no more, to avert the real or apparent danger," etc. This court rightfully held that the instructions "required the appellant to measure the force necessary to be used . . . with as much exactness as an apothecary would drugs on his scales;" and also rightfully held, following the universally approved practice, that defendant "had the right to use such force as was *apparently* necessary to have averted the impending peril," and that he was not required to measure accurately the *exact* force that was necessary to avert the danger, either real or apparent.

Instruction number 4 in this case conformed *exactly* to what the court approved in the Carroll case, for it says that "the defendant had the right to use such means as was necessary *or as reasonably appeared to him to be necessary,* but no more." Surely, the defendant was not prejudiced when the court directed in its instructions that he might employ not only the necessary means but such as reasonably appeared to him to be necessary. He was not entitled to employ any other means, and manifestly it did not prejudice his rights to so instruct the jury by the use of the words, "but no more." We, therefore, conclude that the complained of instruction fully protected the rights of the defendant and correctly submitted to the jury the circumstances under which he might kill the deceased in the exercise of his lawful right of self-defense, and criticisms (a) and (b) cannot be sustained.

The foundation for ground (2) is that the court refused to postpone the conclusion of the trial until the next morning when a witness for the defendant would be present with a letter or letters written by the deceased to the witness showing ill-will or malice toward defendant, and proceeded with the prosecution of the trial until a late hour at night when the verdict of conviction was returned. The letter or letters, which it is claimed were relevant, were written by the deceased to the witness as president of a coal company of which the defendant was superintendent. The feeling of deceased toward defendant was abundantly established by parol testimony given by witnesses for defendant on the trial, and the letters referred to were but cumulative, although of indisputable character. If it could be said that the court committed error in not postponing the trial for a reasonable

time to enable the defendant to introduce the letters, and if it were also shown that due diligence had been used to procure them, yet we are confronted with the fact that the only method employed to get the letters in the record, or the court's action with reference to their introduction in the record, was by means of an affidavit filed by defendant in support of his motion and grounds for a new trial. It nowhere appears in the transcript of the proceedings of the court that any motion was made upon any ground to postpone the continuance of the trial, and, of course, the record is barren of any ruling or order of the court upon any such motion. The failure of the record to contain such matters could have been supplied by a duly certified bill of exceptions if any such things had happened at the trial, and if so certified they would then be presented in such a manner as that we could consider them the same as if they had been spread upon the record. However, neither method was employed to present the alleged error to this court, and we have consistently held that without such presentation the complained of matters will not be considered on appeal. Miller's Appellate Practice, section 65, and cases cited in note 75; Deitchman v. Bowles, 166 Ky. 285; Illinois Central R. Co. v. Evans, 170 Ky. 536, and Chreste v. Louisville Ry. Co., 173 Ky. 486. Without further discussion, we must hold that this ground, even if it was meritorious, but which we do not decide, cannot for the reason stated be considered.

In disposing of ground (3), it will be necessary to only state briefly and in a general way the relevant facts. Defendant was superintendent of a coal mine operated by the Liberty Coal Company on the left-hand fork of Beaver creek, in Floyd county, and the deceased had been the physician of the company at that mine. He had made contentions that the defendant as superintendent of the mine had failed to properly collect and account to him for his dues as company physician and had withheld from him a part of his dues. About two months before the killing, the deceased had been discharged as physican for the company and another one selected in his place. He was considerably angered at defendant and made threats against him even as late as the early part of the afternoon of the day the killing occurred. The parties met at about 5 p. m. at the end of a footbridge across the creek where deceased was working on his railroad motorcycle which he used in visiting his patients. Only four

persons were present, the deceased, the defendant and two other witnesses, a Mr. and Mrs. Jones, who were along with defendant. The deceased spoke to Jones and wife and immediately asked defendant why he did not want Mr. Jones to work for him (deceased), which defendant answered by saying that he did not have any objection to Jones working for him (deceased) when he was not working for the company. According to Jones and wife, who were introduced by the Commonwealth, the deceased then said: "Are you going to treat me that way? You stole off of me at the camps in the office," to which defendant replied, "I reckon not," and deceased said, "You are a damn liar," and defendant replied, "You are another damn liar," when each party reached for his pistol and immediately began shooting. Mrs. Jones did not observe who fired the first shot nor is Mr. Jones positive on that point, though he gave it as his best impression that the deceased did so, and the defendant testified positively to that fact and that the first shot struck one of his shoulders inflicting a flesh wound; but, Mr. Jones testified that the first shots fired by each party were almost simultaneous. Defendant shot five times and emptied his pistol and, according to his testimony, he started to turn in order to get away, but that deceased then fired another shot, striking him in the hip and inflicting a flesh wound, whereupon he drew another pistol which was larger than the first one and fired three other shots at the deceased, at least one of which inflicted a fatal wound, as was testified to by the witnesses who said that it was made by a larger ball than were other wounds inflicted by the smaller pistol. Mr. Jones testified that after defendant emptied his first pistol the deceased fired no other shot and that defendant turned to go away and then drew his second pistol and resumed the firing when deceased was not engaged in shooting at all. It will, therefore, be seen that there is quite a conflict in the testimony as to how the killing occurred or the circumstances under which defendant did his last shooting. If we take the testimony of the defendant alone, he made out a case of self-defense, but if the shooting occurred as described by the witness, Jones, then the jury was fully authorized to at least find that some of the shooting by defendant was not done in his necessary self-defense, but in sudden heat and passion, or in some other manner to create the offense of voluntary manslaughter; and, under such circumstances we do not think that we would be justified in saying that the verdict was

flagrantly against the evidence. The jury no doubt knew the parties as well as the witnesses; it heard their testimony and saw their demeanor on the stand; it was also, no doubt, familiar with the state of feeling existing between the two participants and, as we view the record, it is entirely without the province of this court to say, under the facts and proven circumstances, that the verdict was unwarranted as being flagrantly against the evidence. Perhaps, if we had been on the jury we might not have arrived at the same verdict, but that fact is not the proper criterion by which the justification of the verdict should be measured. If it were otherwise, this court on appeal would take the place of the jury in every case, and where it thought that the verdict was not such as the members would have returned then to order a reversal, but if otherwise to direct an affirmance. Such is not the rule of practice in this or other courts of review, since, under our practice, following the amendment in 1910 of section 281 of the Criminal Code, we are authorized to reverse a judgment as being flagrantly against the evidence only when it appears that it was so much against the weight of the evidence as to shock the conscience and to clearly appear that it was the result of passion or prejudice on the part of the jury. We are unprepared to reach that conclusion from the testimony in this case, and must, therefore, deny this ground.

Finding no error sufficient to authorize a reversal of the judgment, it is affirmed.