# Holcomb v. Commonwealth.

(Decided January 30, 1925.)

## Appeal from Letcher Circuit Court.

1. Homicide—Whether Homicide was Premeditated or Done in Self-Defense Held for Jury.—In murder prosecution, where there was evidence to support either theory, whether homicide was premeditated or done in self-defense held for jury.

2. Homicide—Appellate Court Held Unauthorized to Reverse Verdict as Not Being Supported by Evidence.—Appellate court was unauthorized to reverse verdict, in murder prosecution, as not being supported by evidence, where it did not appear that it was so much against weight of evidence as to shock the conscience, and to clearly appear that it was the result of passion and prejudice on part of jury.

3. Homicide—Instruction Held Not Erroneous, in that it was Not Qualified by Self-Defense Clause.—Instruction that if defendant wilfully and not in necessary self-defense shot decedent, or shot at another and hit decedent, etc., held not erroneous, in that clause "or shot at another and hit decedent" was not qualified by "self-defense" clause.

4. Criminal Law—Clause in Instruction, if Erroneous in Not Being Qualified by Self-Defense Clause, Held Cured by Further Instruction.—If clause in instruction that if defendant shot at another and hit decedent was not qualified by "self-defense clause" in such instruction, error was cured by a further instruction on self-defense.

5. Criminal Law—Refusal of Instructions Theory of which was Covered by Court's Instructions, Held Not Erroneous.—In murder prosecution, refusal of defendant's instruction that he was not guilty if shooting was accidental and unintentional or in self-

defense was not erroneous, where court in other instructions presented such theory.

6. Criminal Law—Instruction Under which Defendant was Not Convicted no Ground for Complaint.—Defendant could not complain of instruction under which he was not convicted.

7. Homicide—Instruction Whether Shooting was Result of Reckless or Careless Handling of Pistol Held Proper Under Evidence.—In murder prosecution, instruction whether or not shooting was direct or natural, though unintentional result of reckless handling of pistol by defendant, was proper, where there was some evidence to support it.

8. Criminal Law—Evidence that Some One had Shot Into Home where Decedent was Killed an Hour Before Homicide Held Irrelevant.—In murder prosecution, evidence that about an hour previous to defendant's arrival at place where decedent was killed some one had ridden by house and shot into it was irrelevant, where neither defendant nor his brother was connected in any way with shooting.

9. Criminal Law—Admission of Evidence that Some One had Shot Into Home where Decedent was Killed Held Harmless.—In murder prosecution, admission of evidence that about an hour previous to defendant's arrival at place where decedent was staying some one had ridden by the house and shot into it was harmless, where neither defendant nor his brother was connected with the shooting.

10. Criminal Law—Jury Presumed to be Composed of Men of Common Sense.—Jury is presumed to be composed of men of common sense, sworn to try case according to law and evidence.

11. Criminal Law—Admission of Evidence that Defendant's Brother had Killed a Man Held Not Erroneous.—In murder prosecution, admission of evidence that defendant's brother had also killed a man in another county was not reversible error, where facts were so interwoven as to make it impossible to try case without bringing out such evidence.

12. Homicide—Trouble with Deceased Two Years Before Trial Held Admissible, where Ill Feeling Continued.—In murder prosecution, evidence that deceased and defendant had, some two years prior to trial, some trouble between them was admissible to show inception of ill feeling, where such ill feeling between deceased and defendant continued from that time on until the shooting.

13. Homicide—Admission of Evidence of Details of Minor Trouble Between Deceased and Defendant Held Harmless Error.—In murder prosecution, admission of evidence of details of trouble, occurring between deceased and defendant some two years prior to trial, was not error requiring reversal, where they were of a minor nature.

R. MONROE FIELDS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Under an indictment charging him with murder, the appellant was found guilty of voluntary manslaughter and sentenced to confinement for sixteen years in the penitentiary, from which judgment he appeals.

The evidence shows that the deceased, Jim Ison, who lived in Harlan county, was visiting during the Christmas holidays, 1923, his father, Philip Ison, who lived in Letcher county. The appellant knew this, since he saw Jim Ison at the neighborhood general store a day or so before Ison was killed. On Christmas Eve, 1923, after dark, the appellant and his brother, Alex. Holcomb, who had been to the postoffice, a mile or so beyond the home of Philip Ison, stopped at this place on their way home. They first called for Chester Ison, but on being informed that Chester was not there, they then asked for Jim. When Jim came out to the gate, they requested permission to go into the house to hear the organ played, whereupon Jim gave them such permission on condition that they would behave themselves. The appellant and his brother were drinking and appellant at that time had on him a half gallon of whiskey in two quart bottles which, after entering the house, he passed around among the men there. After taking a drink, Alex. Holcomb seated himself in a chair by the stove where the gentle influence of its heat coupled with the soothing effect of the moonshine liquor soon put him to sleep, from which he did not waken until after the shooting hereinafter set out had taken place. At this time there was in the Ison home one Floyd Hogg with whom the appellant was not acquainted, and to whom he was then introduced. After some music and some more drinking, appellant crossed over to where his brother was asleep and took from him a revolver. Appellant claims that he did this because the revolver was about to fall out of his brother's pocket. The Commonwealth's witnesses, while not exactly contradicting this statement, do not seem to think that there was much if any danger of this happening. Another hour passed towards the end of which the appellant started to hold a mock trial. It seems that he had another brother who had killed a man and who had been tried about a month previous to this over in Harlan county, at which trial Jim Ison had been a character witness against this brother. Appellant, in a maudlin

way, went over the incidents of this trial, pretending to call up witnesses and examine them. Hogg, who was also seated by the fire, was the unwilling target of the appellant's wit, and he showed no inclination to join in this jest or sport. During this rehash of the trial of appellant's brother, something was said by him to Jim Ison, who replied that he did not care to take part in the conversation and was thereupon told by appellant to "hold his bill." Appellant then redirected his remarks to Hogg and after some little time the latter, then thoroughly angry, got up out of his chair. As he did so he pointed his pistol towards appellant. Hogg claims that this pistol fell out of his pocket as he arose from the chair, and in reaching round to get it for the purpose of replacing it in his pocket he unwittingly pointed it towards appellant. On the other hand, appellant claims that Hogg deliberately drew his pistol upon him. At all events, when the pistol was pointed towards appellant, he grabbed it and drew the one which he had gotten from his brother. Up to this time, except for the one remark addressed to Jim Ison, there does not appear to have been any ill feeling on this occasion between him and appellant. The evidence of the Commonwealth then tended to show that when appellant drew his gun on Floyd Hogg, he turned almost at right angles and shot towards Ison, who was standing before the fire taking no part in the controversy. The appellant, however, claimed that when he drew his gun on Hogg, the latter and Philip Ison grappled with him and in the struggle the gun was accidentaly discharged. However it happened, Jim Ison was hit in the head and instantly killed. Appellant, stopping for a moment to awaken his brother, fled from the scene. He later claimed that he did not know when he fled that he had shot Ison or killed him and that he fled because he thought Philip Ison, who on the shooting had run into the next room, had gone for his gun and he was fearful for his life. There is evidence for the Commonwealth, which appellant denies, that when he was arrested he told the arresting officers that he had shot Jim Ison in the head and pointed out on his own head the exact spot where he had, in truth, shot Ison. There is also evidence which appellant also denies, and in which denial he is supported by some other witnesses, that just prior to the tragedy he had stated that Jim Ison had sworn a lot of lies on his brother in the Harlan trial and no one could do this and get away with

it. There is further evidence which appellant denies that after he had been arrested he was visited by Hogg in the jail and he then stated to Hogg that he had "blown the brains of a s— of a b— out," and they had "best fix up their tale so as to keep it straight."

It is first insisted by the appellant that the verdict was not supported by the evidence. It was the Commonwealth's theory that appellant entertained ill will towards Jim Ison because of the latter's activities in the trial of his brother in Harlan county, and that when he discovered that Ison was in the neighborhood visiting his father, he sought the first opportunity to get into this house under the guise of friendship, and as soon as a pretext presented itself, shot Ison. *Per contra,* it was the appellant's theory that the shooting was done at a time when he thought he was being attacked by Hogg and that the firing of the gun was purely accidental and the killing of Ison unintentional. From the statement of the facts above narrated, it is plain that there was evidence to support each theory of this case, and so it was for the jury to say which theory it believed. Anderson v. Commonwealth, 205 Ky. 369, 265 S. W. 824; Spicer v. Commonwealth, 199 Ky. 658; 251 S. W. 853; Marcum v. Commonwealth, 201 Ky. 527, 257 S. W. 714. In McCurry v. Commonwealth, 205 Ky. 211, 265 S. W. 630, the court said:

"The jury no doubt knew the parties as well as the witnesses; it heard their testimony and saw their demeanor on the stand; it was also, no doubt, familiar with the state of feeling existing between the two participants; and, as we view the record, it is entirely without the province of this court to say, under the facts and proven circumstances, that the verdict was unwarranted as being flagrantly against the evidence. . . . We are authorized to reverse a judgment as being flagrantly against the evidence only when it appears that it was so much against the weight of the evidence as to shock the conscience and to clearly appear that it was the result of passion and prejudice on the part of the jury."

See also Fannin v. Commonwealth, 200 Ky. 635, 255 S. W. 514. Under the rule as thus laid down, we cannot disturb the judgment on the first complaint made.

It is next urged that the instructions were erroneous. What we have said about the verdict not being flagrantly,

against the evidence, disposes of appellant's contention that he was entitled to a peremptory instruction. Complaint is made of instruction No. 1, which, so far as pertinent, reads:

"If you shall believe from the evidence in this case beyond a reasonable doubt that the defendant in this county, and before the finding of the indictment herein, willfully, and not in his necessary or apparently necessary defense, or the necessary or apparently necessary defense of his brother, shot James Ison with a pistol, or shot at Floyd Hogg with a pistol and said shot hit James Ison," etc.

Appellant claims that the expression "or shot at Floyd Hogg with a pistol and said shot hit James Ison," was not qualified by the "self-defense clause." We regard this criticism as super technical since the "self-defense clause" plainly qualifies not only the shooting of James Ison but also the shooting at Floyd Hogg and the hitting of James Ison. But if by any chance we should be in error about this, instruction No. 5 plainly cured this defect. It reads:

"If you shall believe from the evidence that at the time the defendant shot said James Ison, if he did so, or shot at Floyd Hogg and said shot struck James Ison, if he did so, he believed and had reasonable grounds to believe that he, or his brother, was then and there in danger of death or the infliction of some great bodily harm at the hands of said James Ison, or Floyd Hogg, and that it was necessary or was believed by the defendant, in the exercise of a reasonable judgment, to be necessary to fire said shot that killed deceased, to avert that danger, either from said James Ison or Floyd Hogg, real or to the defendant apparent, then you will acquit the defendant upon the grounds of self-defense or apparent necessity."

In Catron v. Commonwealth, 140 Ky. 61, 130 S. W. 951, we held that a correct instruction defining murder and manslaughter and a correct instruction defining self-defense are, when read together, a correct statement of the law as against the objection that the law of self-defense should have been stated in the murder and manslaughter instructions. See also Miller v. Commonwealth, 163 Ky, 246, 173 S. W. 761.

Appellant next contends that he was entitled to have instruction Z offered by him given to the jury. This instruction directed the jury to find him not guilty if the shooting was purely accidental or unintentional or in self-defense. However, the court in instructions Nos. 5 and 6 which it gave, presented in apt terms to the jury this theory of the case.

Appellant also complains, though rather feebly, of the fact that instructions Nos. 3 and 4 were given. As appellant was not convicted under instruction No. 4, he was not prejudiced by its being given, although we think it was properly given. Instruction No. 3 presented to the jury the issue whether or not the shooting was the direct or natural though unintentional result of a reckless, wanton, or grossly careless use or handling of the pistol by appellant when he knew it was dangerous to life so handled by him. As there was some evidence to support this instruction, the court properly gave it.

We come now to the complaint regarding the admission of testimony, and appellant places the emphasis of his appeal on this ground. It appears that during the trial the court admitted, over the strenuous objection of appellant, testimony to the effect that about an hour previous to appellant's arrival at Philip Ison's home, some one had ridden by the house and shot into it. The Commonwealth was never able to identify the appellant or his brother as the one who shot into the house or connect them in any way with the shooting. Although this evidence was plainly incompetent and irrelevant, yet we do not regard its admission as prejudicial. The jury is presumed to be composed of men of common sense, sworn to try the case according to the law and the evidence, and inasmuch as the Commonwealth admittedly was unable to connect the appellant or his brother with this shooting into the house, they could not be held accountable for the same. Hence this shooting could have had no bearing in determining appellant's guilt or innocence of the crime charged.

It is next complained that the court admitted evidence showing that appellant's brother, Jim Holcomb, had also killed a man in Harlan county. It would have been impossible to try this case without this testimony getting in, because, in the first place, it was at this trial the deceased testified and for which reason the Commonwealth claimed the appellant entertained ill will towards him. In the second place, the appellant in a maudlin

way was rehashing this trial with Hogg just before the fatal shot was fired, and the witnesses could not have told the facts surrounding the killing without bringing out in an incidental way the fact that appellant's brother had killed a man in Harlan county. It was one of those cases where the facts are so interwoven as to make it impossible to try the case without bringing out this other matter. Hence the admission of this evidence was plainly correct.

Lastly, it is contended that the court erred in admitting testimony showing that the deceased and appellant had, some two years prior to the trial, some trouble between them. This testimony was objected to, first, on the grounds of remoteness, and secondly, on the ground that the court permitted the details of this trouble to go in. So far as the remoteness is concerned, as there was evidence tending to show, although appellant contradicted it, continued ill feeling between defendant and appellant from that time on until the shooting, the evidence was admissible to show the inception of the ill feeling. So far as the details are concerned, even conceding that the court should have excluded them, yet they were of such minor nature that they were clearly not prejudicial, and the reversal will not be had because of them.

Perceiving no error prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.

Judgment affirmed.