## Vignoroli v. Commonwealth.

(Decided April 27, 1928.)

Appeal from Letcher Circuit Court.

1. Homicide.—In prosecution for manslaughter, where defendant claimed he believed officer killed was burglar, and witnesses for commonwealth testified that defendant was informed that those entering house were officers armed with search warrant, evidence held to sustain verdict of conviction.

2. Homicide.—In prosecution for manslaughter, where officers forcibly entered home and discovered liquor, and only person who appeared was defendant, who had room there, who was requested to come down stairs and surrender, instruction that officers had right to arrest defendant held proper by reason of Ky. Stats., Supp.

1926, sec. 2554a-14, giving officers right to arrest person in charge of building in which intoxicating liquor is found.

3. Criminal Law.—In prosecution for manslaughter, where officers forcibly searching house found intoxicating liquor, and only one who appeared was defendant, who was roomer or boarder, which fact he did not explain, admission of evidence as to finding intoxicating liquor held not error by reason of Ky. Stats., Supp. 1926, sec. 2554a-14, providing for arrest of person in charge of building in which intoxicating liqour is found.

R. MONROE FIELDS and DAUGHERTY & BARRETT for appellant.

J. W. CAMMACK, Attorney General, and J. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Joe Vignoroli and Joe Centi were jointly indicted charged with the murder of Bob Wright, a deputy sheriff of Letcher county. Appellant, having been tried separately, was convicted of manslaughter, and his punishment fixed at confinement in the penitentiary for a period of 15 years.

As grounds for reversal, he urges that the verdict is flagrantly against the evidence; that the court erred in admitting incompetent evidence; and that the instructions are erroneous.

On the night the homicide occurred, the sheriff of Letcher county, with a number of deputy sheriffs and other officers, armed with search warrants, were engaged in raiding a number of houses located in the town of Jenkins and its suburbs. Appellant and Centi resided at Burdine near Jenkins. The house in which they resided had four rooms—two on the first floor and two on the second floor. Centi, his wife, and two small children occupied one room on the second floor and the appellant occupied the other one on that floor. Shortly after midnight the deceased, Bob Wright, and a number of other officers arrived at the house, and demanded admittance. The evidence for the commonwealth shows that one of the occupants of the house demanded to know who it was desiring to enter his house, and the officers replied that they were federal and county officers, and had a search warrant authorizing them to search the house. What

occurred at this point is thus described by one of the witnesses for the commonwealth:

"Bob called at the house for them to open the door, Bob hollered about twice, I believe, and at last they answered them, and they told them they had a warrant for the house, to come down and open the door up, and he told them to get on away from there, that was his house, get on away, and he told him to come on down again, and he told him to get to hell away from there, and Clark stepped back out where he could see up in the window where he answered him, and he said he had a warrant for his house, to come on down and open the door, and he told him again to get away from there, and Clark said, 'If you don't come down and open up, I will open it up myself," and he waited about five or six minutes."

The officers then forcibly opened the front door to the house. They found a quantity of home brew and wine in one of the rooms on the first floor, and one of the searching party requested the occupants of the house to come down stairs. Appellant appeared at the head of the stairway, and as to what then occurred one of the officers testified as follows:

"When I went in the house, the other fellows were tearing that home brew stuff down, and I went to the stairway, and heard somebody cursing inside, and I looked up and seen the side of his face, and told him to come on down, we were all officers and wasn't going to hurt him, and I kindly made a step up on the stairway, and he said, 'G— d— you, if you come up here, I will shoot you,' and I just stopped and didn't go any farther, and the other boys come around by the side of me, and Clark looked up and said, 'Go and get him, Bob,' and he stepped about the third stairway above where I was standing, and the pistol fired."

Several of the officers testified that before appellant fired the shot that killed Wright he was informed they had a search warrant and had found a quantity of home brew and wine, and that they requested him to come down stairs. None of the officers present were acquainted with either Vignoroli or Centi.

Appellant claims that he was asleep when the officers arrived at the house, and that he did not hear them when they demanded admittance, but that he was awakened when they forced an entrance into the house; that he had $360 in money in his room; and that, when he appeared at the head of the stairway, he saw several men starting up stairs, and, believing them to be burglars, he fired the shot that killed Wright. He denied that any of the men informed him they were officers or that they had a search warrant.

The foregoing statement of facts discloses that the case was one for the jury. A number of witnesses for the commonwealth testified that appellant was informed that those present were officers armed with a search warrant, and that he would not be hurt. On the other hand he denied that these statements were made to him, and claimed that he believed the officers were burglars, and that his life was in danger. Under such circumstances it was for the jury to say which witnesses it believed. Holcomb v. Commonwealth, 207 Ky. 372, 269 S. W. 349.

Since appellant's complaint of the instructions given is predicated on the theory that the objectionable portion of the instruction was based on imcompetent evidence admitted over his objections, these two assignments of error will be considered together.

In defining the rights and duties of the officers and appellant in the first instruction, the court used the following language:

"Upon finding intoxicating liquors therein, said officers had a right to arrest the defendant Joe Vignoroli, and it was their duty to do so. However, it was their duty to inform him of their intention to arrest him and the nature of the charge upon which he was being arrested, if they had reasonable opportunity to do so, and thereupon it was his duty to peaceably submit to said arrest."

It appears that the house where the homicide occurred was owned or leased by Joe Centi, and that appellant had been a roomer and boarder in the Centi home for more than two years. It is insisted that under these circumstances the officers had no right to arrest appellant, he not being the person in charge of such house

within the meaning of section 2554a-14, Kentucky Statutes, 1926 Supplement, and that the admission of evidence as to the finding of intoxicating liquor therein was error. The section of the statutes above referred to provides in part:

"If admission be not given on demand made the officers enforcing said warrant shall force an entrance into such house, building or other place and seize any intoxicating liquors and illicit stills, or apparatus designed for the manufacture of liquor and arrest the keeper or person in charge of such house, building or other place, or intoxicating liquors or still or apparatus, and carry such person before said judge issuing the warrant to be dealt with according to law."

Under this provision, when liquor is found in a building being lawfully searched, it becomes the duty of the officer to arrest the person in charge of such building or intoxicating liquors. The only person that appeared after the officers entered the Centi home and discovered the liquor was appellant. He was informed by the officers that they had a search warrant and had discovered liquor on the first floor, and he was requested to come down stairs and surrender, at the same time being assured he would not be harmed. In response, appellant cursed the officers, and threatened to kill them. None of the officers knew either appellant or Centi, and, under these circumstances, they were warranted in assuming that appellant was the person in charge of the premises. He offered no explanation, and, conceding that he was only a roomer in the house, his conduct would raise the presumption that he was interested in the liquor that had been discovered. Under the circumstances, the evidence complained of was competent, and the instructions were proper.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.