## Parker v. Commonwealth.

(Decided Nov. 1, 1932.)

WILLIAMS & HANDLEY, L. B. HANDLEY, and G. J. RICE for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Affirming.

Indicted for murder, the appellant was convicted of the offense of voluntary manslaughter and sentenced

to serve fifteen years in the penitentiary. He appeals.

The sole ground for reversal is that the verdict is flagrantly against the evidence. For the commonwealth, it was shown that on the night of his murder, Alfred Thompson, accompanied by Pete Morrison, left the home of John Nelson about 7 or 8 o'clock, going to the home of Howard Hash with whom appellant was then living; that later that evening some shots were heard, and the sheriff and coroner being summoned by the appellant, they arrived at the house of Hash to find Alfred Thompson lying in the yard near the door with two shots in his back, one of them fatal. His chin and shoulder were also shot, evidently from behind. The clothing around the shots in the back was powder burned. Near his hand was lying a knife with a black handle. Appellant, when the sheriff and coroner got there, admitted to them that he had killed the deceased and made some claim about having shot himself in the hand in the course of shooting the deceased. This is all the commonwealth had bearing on the killing. The appellant testified that he was working for Hash; that he had been to a funeral that afternoon and that on getting home he did the chores and ate his supper; that shortly thereafter he heard a noise in the barn, and taking a pistol down from the wall, he went out to see what the trouble was; that he found nothing of consequence and returned to the room; that later Thompson came to this house showing evidence of being under the influence of liquor; that in a sportive mood Thompson dared him to fire the pistol which he had and that he fired one shot in the floor and one into the wall; that thereafter the crowd engaged in a crap game and shot the dice for about two hours. At the end of this time Thompson became dissatisfied with the stakes and insisted that appellant thereafter should "fade him for a dollar." Apellant stated that he could not afford to shoot the dice for such high stakes, and thereupon Thompson called him "a God damned cheap son of a bitch." The appellant responded that Thompson was another. Thereupon Thompson advanced upon appellant with a knife. At this juncture one Skaggs, who was in the room with the party, ran out, but Hash grabbed the appellant in the effort to part him and Thompson. Appellant then begged Thompson to put down his knife, declaring to Thompson that he would empty his pockets on the table and that they could then

fight fair. Thompson spurning the offer continued to advance upon appellant, whereupon appellant asked Hash if it was fair for Hash to continue to hold him with Thompson being free. Hash then turned the appellant loose and ran out of the room. Thompson then grappled with appellant and the two fought around the room, appellant's hand being cut by Thompson in the melee. While appellant was clinched with Thompson, he shot Thompson in the back. Thompson then loosened his hold and appellant ran out of the room followed by Thompson, who fell dead just as he got outside the door. Hash and Skaggs corroborate the appellant up to the point where they left the room, but Skaggs says that the knife which Thompson had was a pearl handled knife, and if it was a black-handled knife that was found by the hand of Thompson after his death, it must have been substituted for the pearl-handled knife; the substitution having been made by some friend of the appellant. There is also some testimony concerning some women being at this house but in another room, and some testimony that all of the party had partaken at least somewhat of liquor. It is earnestly contended that on this showing a perfect case of self-defense was made out and the jury's finding to the contrary was flagrantly against the evidence. In a very similar case of Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732, 735, where the commonwealth introduced no witness as to what took place at the actual time of the killing and where the defense witnesses made out a case of self-defense, we, in upholding the verdict of the jury convicting Simmons of manslaughter as against the contention that such a verdict was flagrantly against the evidence, said:

"The commonwealth had proved that Dugard was dead, and that Simmons had admitted killing him by shooting him with a pistol. With these facts established, it could not be said that there was no evidence of the guilt of Simmons. Simmons' admission that he killed Dugard made it incumbent upon him to justify or excuse his act by evidence. Culpepper v. State, 4 Okl. Cr. 103, 111 P. 679, 31 L. R. A. (N. S.) 1166, 140 Am. St. Rep. 668. Where there is any evidence, however slight, tending to show guilt of the accused, the case should go to the jury. Spicer v. Com., 199 Ky. 658, 251 S. W. 853; Belcher v. Com., 181 Ky. 516, 205 S. W. 567;

Ratliff v. Com., 182 Ky. 246, 206 S. W. 497; Levering v. Com., 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140.''

What is said in that case disposes of appellant's contention here. The jury did not have to believe the story of the appellant and his witnesses. Thompson was killed; he was shot in the back; his clothing was powder burned. The commonwealth showed that appellant claimed at the time he was arrested that he had shot himself in the hand. Later he denied making this statement and claimed that he had been cut by Thompson. There was some evidence of a substitution of a knife for the one which Skaggs said Thompson had. The jury had a right to disbelieve the story told by appellant and his witnesses, and with the fact of a man's death at the hands of appellant being established, coupled with the bullet wounds being in the deceased's back, they could have concluded from such circumstances that appellant was in no danger when he shot his adversary in the back. At least it was a question for the jury.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.