## Sargent v. Commonwealth.

(Decided Feb. 7, 1936.)

WILLIAM LEWIS & SON for appellant.

B. M. VINCENT, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

Appellant, Lee Sargent, was convicted of the crime of attempted robbery and sentenced to twenty-one years in the penitentiary. He complains (1) that a demurrer to the indictment should have been sustained, and (2) that the verdict is flagrantly against the evidence.

Appellant does not point our wherein he claims that the indictment is defective, and we see nothing wrong with it. We may therefore dismiss it from further consideration.

Without going into great detail, the testimony indicates that Scott McPhetridge, who lived about seven miles east of London, in Laurel county, was held up on Monday, October 22, 1934, between 6:30 and 7 o'clock in the morning. John and Ruby McPhetridge, a boy and a girl who were relatives of Scott McPhetridge, were with him at the time, riding in his wagon. Two men came out of the woods by the side of the road and demanded that the wagon be stopped and that its occupants throw up their hands. One of the robbers was armed with a rifle or a shotgun, and the other with a pistol. The one with the gun remained at some lit-

tle distance, while the other came up to the wagon and directed all three of its occupants to dismount. He then searched Scott McPhetridge and John McPhetridge, but they had nothing of value on their persons. The robber who had the pistol was described as having on light trousers and no coat. He had a toboggan cap down over his eyes with holes through it. John and Ruby McPhetridge say that they could see this man's hair at the back of his head in spite of the toboggan cap and that he was red-headed. After the robbers permitted the wagon to proceed, Mr. McPhetridge went to a house nearby and called up "the law." In about forty minutes a deputy sheriff and a town marshal proceeded down the road in an automobile. As they passed an old vacant house about a mile from the place where the crime was committed, they saw a man, whom they later identified as appellant, looking out of the house. The sheriff and marshal proceeded on up the road until they reached a place where they could turn their car around, and then came back to the house. By the time they had returned, the man and his companion had fled out through a cornfield and could no longer be seen. These witnesses say they called to the men to stop, and that the men thereupon began to shoot at the witnesses, exchanging three or four shots with them.

Mr. McPhetridge went before the grand jury which was then in session, but refused to identify either of the robbers, although he stated that he thought he knew who it was that had held him up, but was not sufficiently certain to swear to it. About two months thereafter, Mr. McPhetridge swore out a warrant against the appellant. It was shown in evidence that appellant has a brother who looks very much like him and who likewise has red hair. Mr. McPhetridge says that he was not sure until some time after the robbery as to which of the Sargent boys it was that held him up, but that on seeing appellant some time after the holdup, he was positive that it was he who had committed the crime. John McPhetridge positively identified the appellant, but Ruby McPhetridge was unable to do more than give a general description of the robbers.

Appellant testified for himself and introduced seven witnesses in an attempt to establish an alibi. He

was likewise permitted to read to the jury portions of his affidavit for continuance, in which he set out what two absent witnesses would say if present. The testimony of the absent witnesses was merely cumulative. Appellant's witnesses testified in substance that on the Sunday night preceding the holdup, appellant attended services at the Old Salem Church and from there went to the home of Marshall Webb to spend the night, arriving at Webb's home about 10 o'clock in the evening. These witnesses say that appellant was dressed in overalls or dark trousers, a black shirt, and a black sweater. On the morning of the holdup appellant had breakfast about sunrise at the Webb house, which was some two miles away from the point of the alleged robbery. About 8 o'clock (after the hour fixed by the witnesses for the commonwealth as the time of the robbery) appellant left the home of Marshall Webb and was seen to go toward his own home in a direction which was opposite to that of the point where the holdup took place. It is argued for the commonwealth that there is a failure to account for the presence of appellant between the time when he claims to have had breakfast and 8 a. m., when he left the Webb home. This is undoubtedly true as to some of the witnesses, but one or two of them do testify to facts which, if true, necessarily would mean that appellant remained there during this entire period and could not have gone the two miles to the point of the holdup and have returned in time to be present when these witnesses claim that he was at the Webb home. Also, it does not explain the difference in the witnesses as to the clothes that appellant was wearing.

Appellant vigorously attacks what he claims to be inconsistencies in the statements of Scott McPhetridge, and insists that this witness should not be believed because his testimony before the grand jury at the time of the robbery was to the effect that he was not sure who it was that held him up, while now he undertakes positively to identify appellant. McPhetridge offers a perfectly satisfactory explanation of this in his statement that at the time of the giving of this first testimony he did not know appellant by name, and that it was not until he saw him later that he was positive of his identification. Furthermore, there is no such criticism open to the testimony of John McPhetridge,

whose identification of appellant was equally as positive. A similar attack is waged against the testimony of the deputy sheriff, but the same answer may be applied as in the case of Mr. McPhetridge.

Under the circumstances, therefore, the question must be reduced to whether or not one set of witnesses is to be believed, or another set of witnesses is to be believed. The fact that the jury accepted the story of one set rather than the other does not authorize us to reverse the judgment even though, if sitting as jurors, we might not have arrived at the same verdict. McCurry v. Commonwealth, 205 Ky. 211, 265 S. W. 630. See, also, Partin and Allen v. Commonwealth, 197 Ky. 840, 248 S. W. 489, and cases there cited. The jury no doubt knew the witnesses and it heard their testimony and saw their demeanor on the stand. We are unable to say that its conclusion was flagrantly against the evidence or, indeed, considering all of the details of the record, that we would ourselves have reached a different conclusion on the facts presented.

Judgment affirmed.