## Thomas v. Commonwealth.

(Decided Feb. 14, 1936.)

R. W. LISANBY for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

Joe Thomas was sentenced to two years in the penitentiary for robbery. On the night of June 24, 1933, three men came to the house of Frank Brown, in Caldwell county, two of them entered the house and held up the occupants, while the third man remained on the outside. Mr. Brown, whose house it was, testified that he had lived there since 1886, and that Mr. Carmen Hobby and his wife lived there also and kept house for him. They had all just sat down to supper when some one called from outside, and Mr. Hobby got up and went to the front door. While he was doing this, two men came around to the kitchen door. Mr. Hobby returned to the kitchen door and was asked by the men if he knew of any one by the name of Jackson who lived in the neighborhood. The men said they were lost, and asked for a drink of water. At this moment they both rushed into the house, and one of them thrust a pistol at Mr. Brown, and said: "Hold up your hands and give us your money." Mr. Brown, instead of complying, commenced to struggle with this robber, while the other man forced Mr. and Mrs. Hobby to stand against the wall. Mr. and Mrs. Hobby testified to substantially the same facts. After taking Mr. Brown's money, the robbers took Mr. and Mrs. Hobby and Mr. Brown about 100 yards from the house and directed them to stay there for thirty minutes before returning. At a signal from a car on the road, the robbers left them.

The following morning, which was Sunday, the sheriff and two deputies came to the Brown home and took a description of the robbers. As a result of that description, the sheriff went immediately after Ruby Thomas, father of the appellant, and arrested Ruby, who was later identified by both Mr. Brown and Mr. and Mrs. Hobby as the man who struggled with Mr. Brown. The description of the second robber was not so clear as that of Ruby. However, as the sheriff and his deputies approached the house where Ruby Thomas was staying, appellant and one Harold Russell saw them coming and escaped. It was not until December of 1933 that appellant was finally apprehended. Mr. Brown was not able to identify appellant because, he says, he was too busily engaged in his scuffle with Ruby Thomas, but both Mr. and Mrs. Hobby are quite positive in their identification of him as the robber who held them at the point of a pistol.

Appellant, testifying in his own behalf, says that he ran from the officers because he thought the federal officers were looking for him and that the sheriff would turn him over to the federal men. He positively denied participation in the robbery. He introduced eight witnesses, who testified that appellant was with them from about sundown until after dark on the night in question.

It is argued for appellant that, conceding there was sufficient evidence to take the case to the jury, nevertheless the evidence is not sufficient to sustain the verdict, and the verdict is flagrantly against the evidence. It is asserted that, because the commonwealth's witnesses say that the second robber was the smaller of the two men, while appellant testifies that he is four inches taller and heavier than his father, and this is not contradicted by the commonwealth, we cannot accept the testimony of the commonwealth's witnesses as true in one particular and not in another. Appellant relies on a number of cases, of which Tarkaney v. Commonwealth, 240 Ky. 790, 43 S. W. (2d) 34, and Pardue v. Commonwealth, 227 Ky. 205, 12 S. W. (2d) 288, are examples. The rule in the cases cited is well established that, where the evidence is as consistent with innocence of the accused as with his guilt, a verdict of conviction will not be sustained. However, in each of the cases on which appellant relies, excepting

the Tarkaney Case, the evidence was entirely circumstantial. In the Tarkaney Case there was direct evidence identifying a corpse, but the established circumstances were so utterly at variance with the direct testimony, which, on its face, was unsatisfactory, as totally to destroy its credibility. No such situation exists in the case at bar. Even if we assume the truth of the testimony of appellant's witnesses to the effect that he is larger than his father, this was purely a collateral matter, about which the witnesses for the commonwealth might well have been mistaken and at the same time be correct in their identification. In other words, the question of appellant's size was an incident to be considered by the jury in determining the weight it should accord to the testimony of the witnesses for the commonwealth, who positively identified appellant as one of the robbers. It does not destroy that testimony. The issue to be tried was whether appellant was guilty or innocent, not how big he was.

In the last analysis, the case simply reduces itself to a question of whether the jury is to believe one set of witnesses or the other, with no way for us to tell which set was telling the truth. We are therefore not authorized to disturb the verdict. Lee Sargent v. Commonwealth, 262 Ky. 547, 90 S. W. (2d) 734. McCurry v. Commonwealth, 205 Ky. 211, 265 S. W. 630; Partin & Allen v. Commonwealth, 197 Ky. 840, 248 S. W. 489.

Judgment affirmed.